UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*JUDGE ROBINSON*

SARINSKY'S GARAGE INC.,

Plaintiff,

vs.

Docket No. 08 CIV 5247

ERIE INSURANCE COMPANY, and
ERIE INSURANCE COMPANY OF
NEW YORK,

Defendants.

## NOTICE OF REMOVAL

Defendant Erie Insurance Company ("Erie"), files this Notice pursuant to

28 U.S.C. § 1446 and Local Civil Rule 81.1.

## Introduction

1.      Plaintiff, Sarinsky's Garage Inc., commenced this action by filing its

summons and complaint in the Orange County Clerk's Office on April 28, 2008.  A copy of

plaintiff's summons and complaint is attached hereto as Exhibit A.

2.      Defendants Erie Insurance Company and Erie Insurance Company of

New York served their answer to plaintiff's complaint on or about June 6, 2008.  Defendants'

answer also was sent to the U.S. District Court Southern District of New York Clerk's Office for

filing on June 6, 2008, as well.  A copy of defendants' answer is attached hereto as Exhibit B.

3.    Erie Insurance Company of New York is a corporation organized under the laws of the State of New York, with its principal place of business located at 120 Corporate Woods, Rochester, New York 14692. However, only one contract of insurance was issued in this case, and co-defendant Erie Insurance Company of New York is not proper party to plaintiff's action as it did not issue the contract of insurance at issue here. Same was issued by co-defendant Erie Insurance Company, a corporation organized under the laws of the State of Pennsylvania, with a principal place of business located at 100 Erie Insurance Place, Erie Pennsylvania 16530. A certified copy of plaintiff's insurance contract is attached hereto as Exhibit C.

4.    Erie timely files this Notice of Removal within the thirty day time period required by 28 U.S.C. § 1446(b).

## Nature of Suit

5.    Plaintiff, in his complaint, seeks damages for breach of contract and declaratory judgment in connection with an insurance claim it submitted in September 2006. By way of its complaint, plaintiff claims that it has sustained damages in the amount of $118,539.87.

## Basis for Removal

6.    Removal is proper based upon diversity:

(A)    There is complete diversity between the proper parties to this lawsuit under 28 U.S.C. § 1332. Although Erie Insurance Company of New York is a named

defendant in plaintiff's action, it is an improper party to this case as it did not issue the insurance

contract to plaintiff. Same was issued by Erie Insurance Company, a Pennsylvania Corporation.

Accordingly, there is diversity between the appropriate parties in this case.

(B)     Upon information and belief, the plaintiff is a citizen of the

State of New York with a principal place of business located at 171 New Windsor Highway,

New Windsor, County of Orange, State of New York 12553. *See* Exhibit A at ¶ 2

(C)     Defendant, Erie, is a corporation organized under the laws of the

State of Pennsylvania with its principal place of business in Erie, Pennsylvania at the address

identified above.

(D)     Defendant, Erie Insurance Company of New York is an improperly

named defendant (since it did not issue the insurance contract in this case) and it is a corporation

organized under the laws of the State of New York with its principal place of business in

New York at the address identified above.

(E)     The amount in controversy exceeds $75,000. *See* Exhibit A

at ¶ 25.

(F)     A true copy of the summons and complaint is attached hereto and

incorporated by reference. *See* Exhibit A. Defendants were served with plaintiff's complaint on

or about May 8, 2008 when plaintiff served its summons and complaint on the Special Deputy

Superintendent of the State of New York Insurance Department. A copy of the proof of service

of service of same is attached hereto as Exhibit D.

(G)     Defendants answer is attached hereto as Exhibit B.

## **The Notice of Removal is Procedurally Correct**

7.    Defendant's Notice of Removal is procedurally correct as there is diversity among the correct parties at issue in this case, and the amount in controversy exceeds $75,000.

8.    As required by 28 U.S.C. § 1446(b), Erie has filed this Notice of Removal within thirty days of receiving plaintiff's summons and complaint.

9.    Also as required by 28 U.S.C. § 1446(b), Erie has filed this Notice within one year of the commencement of this action.

10.    All defendants that are proper parties in this action and that have been properly served in this action join in the removal of this action to federal court.

11.    Defendant attaches to this Notice all pleadings, process, orders and all other filings in the State Court action as required by 28 U.S.C. § 1446(a) and this Court's local rules.

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1441(a) because the Southern District of New York includes the place in which the state action has been pending.

13.    Erie will properly file a copy of this Notice of Removal with the Clerk of

the State Court in which this action is pending.

Dated: Buffalo, New York
        June 6, 2008

**RUPP, BAASE, PFALZGRAF,**
**CUNNINGHAM & COPPOLA, LLC**
Attorneys for Defendants

By: _____
        Marco Cercone, Esq., of Counsel
1600 Liberty Building
Buffalo, New York  14202
(716) 854-3400
S.D. N.Y. Bar #:  MC5326

STATE OF NEW YORK
INSURANCE DEPARTMENT
One Commerce Plaza
Albany, NY 12257

CI0930113259

LAW DIVISION   ES45
FOOKED

MAY 14 2008

STATE OF NEW YORK
Supreme Court, County of Orange

2008-04354

................................................................................................................

Sarinsky's Garage Inc.

against                                        Plaintiff(s)

Erie Insurance Company of New York

                                               Defendant(s)
..............................................................................................................

RE : Erie Insurance Company of New York

Attorney for Plaintiff(s) and Defendant  please take notice as follows:

Sirs :
Attorney for Plaintiff(s) is hereby advised of acknowledgement of service upon me of
Summons and Verified Complaint in the above entitled action on May 6, 2008 at Albany,
New York. The $40 fee is also acknowledged.

Original to Attorney for Plaintiff(s) :

    Bloom & Bloom, P.C.
    Attorneys at Law
    530 Blooming Grove Turnpike
    P.O. Box 4323
    New Windsor, New York 12553

Pursuant to the requirement of section 1212 of the Insurance Law, Defendant is hereby
notified of service as effected above. A copy of the paper is enclosed.

Duplicate to Defendant :

    Jan R. Van Gorder, Esquire
    Erie Insurance Company of New York
    100 Erie Insurance Place
    Erie, Pennsylvania 16530

                                    Clark J. Williams

                              by Clark J. Williams
                              Special Deputy Superintendent

Dated Albany, New York, May 09, 2008
431609    C.A.#191255

HOME OFFICE
MAY 14 2008

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE

----------------------------------------

SARINSKY'S GARAGE INC.,

                              Plaintiff,

          -against-

ERIE INSURANCE COMPANY, and
ERIE INSURANCE COMPANY OF NEW YORK,

                              Defendants.

----------------------------------------X

**2008 - 04354**

Index No. _____

Purchase Date: APR 28 2008

Plaintiffs designates Orange
County, N.Y. as the venue for
Trial.

The basis of venue is that the
primary place of business of the
Plaintiff is located in Orange
County, N.Y.

*SUMMONS*

*TO THE ABOVE-NAMED DEFENDANTS:*

          *YOU ARE HEREBY SUMMONED* to answer the Verified Complaint in this action
and to serve a copy of your Answer, or, if the Verified Complaint is not served with this
*SUMMONS*, serve a Notice of Appearance, on the Plaintiff's Attorney(s) within *TWENTY
(20)* days after the service of this *SUMMONS*, exclusive of the day of service [or within
*THIRTY (30)* days after the service is complete if this *SUMMONS* is not personally
delivered to you within the State of New York]; and in the case of your failure to appear or
answer, judgment will be taken against you by default for the relief demanded in the
Complaint.

Bloom & Bloom, P.C.
530 BLOOMING GROVE TURNPIKE
IN THE PROFESSIONAL CIRCLE
P.O. BOX 4323
New Windsor, New York 12553

Dated: April 24, 2008
          New Windsor, N.Y.

FILED
2008 APR 28 A 11: 15
ORANGE COUNTY CLERK

Very truly yours,

Kevin D. Bloom, Esq.
Bloom and Bloom, P.C.
Attorneys for Plaintiff,
SARINSKY'S GARAGE INC.,
Bloom and Bloom, P.C.
530 Blooming Grove Turnpike
New Windsor, N.Y. 12553
845-561-6920

TO: ERIE INSURANCE COMPANY
     120 Corporate Woods
     Suite 150
     Rochester, N.Y. 14623

TO: ERIE INSURANCE COMPANY OF NEW YORK
     120 Corporate Woods
     Suite 150
     Rochester, N.Y. 14623

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE

-------------------------------------------------------

SARINSKY'S GARAGE INC.,

Index No. 2008-04354
Purchase Date: April 28, 2008

Plaintiff,

-against-

**VERIFIED COMPLAINT**

ERIE INSURANCE COMPANY, and
ERIE INSURANCE COMPANY OF NEW YORK,

Defendants.

-------------------------------------------------------X

Plaintiff, SARINSKY'S GARAGE INC., by and through its attorneys, BLOOM &
BLOOM, P.C., as and for its verified complaint, alleges as follows:

### AS AND FOR A FIRST CAUSE OF ACTION
### PREMISED UPON BREACH OF CONTRACT:

1.) That, at all times hereinafter mentioned, the Plaintiff, SARINSKY'S GARAGE
   INC., (hereafter sometimes referred to as "SARINSKY'S") is a domestic
   corporation duly organized under and existing pursuant to the laws of the State of
   New York.

2.) SARINSKY'S, principal place of business is 171 Windsor Highway, New
   Windsor, County of Orange, State of New York, 12553.

3.) SARINSKY'S engages in automobile repair and sales.

4.) That, upon information and belief, DEFENDANT, ERIE INSURANCE
   COMPANY, is a foreign corporation duly organized under and existing pursuant
   to the laws of the State of Pennsylvania and is authorized to conduct insurance
   business in the State of New York.

5.) That, upon information and belief, DEFENDANT, ERIE INSURANCE COMPANY OF NEW YORK, is a foreign corporation duly organized under and existing pursuant to the laws of the State of Pennsylvania and is authorized to conduct insurance business in the State of New York.

6.) That, upon information and belief, DEFENDANT, ERIE INSURANCE COMPANY OF NEW YORK, is a domestic corporation duly organized under and existing pursuant to the laws of the State of New York and is authorized to conduct insurance business in the State of New York.

7.) That, upon information and belief, DEFENDANT ERIE INSURANCE COMPANY OF NEW YORK is a wholly owned subsidiary of DEFENDANT, ERIE INSURANCE COMPANY. Hereafter, both DEFENDANTS, shall be collectively referred to as "ERIE".

8.) SARINSKY'S purchased a Commercial Property Liability Insurance Policy from ERIE for the period of May 1, 2006, to May 1, 2007 (Proof of purchase for said period is attached hereto as Exhibit A).

9.) ERIE identified this Commercial Property Liability Policy, as their "ULTRAFLEX PACKAGE POLICY." [A copy of "ULTRAFLEX PACKAGE POLICY" (hereafter, referred to as "THE POLICY") is attached hereto, as Exhibit B.]

10.) The terms of THE POLICY were changed by an "ENHANCEMENTS ENDORSEMENT" for "AUTO REPAIR SHOPS" in as much as SARINSKY'S was/is an automobile repair shop. (See Exhibit C).

11.) THE POLICY and the ENHANCEMENTS ENDORSEMENT, *inter alia*, provided indemnification for covered losses for the period of May 1, 2006, to May 1, 2007.

12.) SARINSKY'S duly and timely paid the premium for the aforesaid coverages.

13.) On September 25, 2006, a loss for purposes of THE POLICY occurred at SARINSKY'S premises.

14.) Specifically, the aforesaid loss involved the remediation of gasoline that had leaked from an underground storage tank on SARINSKY'S premises.

15.)     The aforesaid remediation commenced on or about September 25, 2006.

16.)     SARINSKY'S paid a total of $139,539.87 for the aforesaid remediation.

17.)     SARINSKY'S timely notified ERIE of the loss.

18.)     In response to SARINSKY'S notification of its loss, ERIE sent a reservation of
         rights letter to SARINSKY'S, so that ERIE could conduct investigations to
         determine whether coverage was available to SARINSKY for the loss (A copy
         of said correspondence, dated October 16, 2006, is attached hereto as Exhibit
         D).

19.)     Specifically, ERIE had to determine whether "the release, discharge of
         dispersal of pollutants was caused by a peril insured against" in order to
         provide coverage to SARINSKY'S (See Exhibit D, second page, bottom
         paragraph).

20.)     Subsequent to the October 16, 2006, correspondence (Exhibit "D"), ERIE sent
         a second correspondence to SARINSKY'S, dated November 29, 2006 (See
         Exhibit E).

21.)     In the November 29, 2006, correspondence (Exhibit "E"), ERIE took the
         position that it had to conduct further investigations with the aid of an
         environmental pollutant spill investigator, to determine whether any coverage
         under the POLICY was available to the insured (See Exhibit E).

22.)     Upon completion of ERIE'S investigation, on or about March 12, 2007, ERIE
         paid to SARINSKY'S the sum of $20,000.00 for his loss (See Exhibit F).

23.)     ERIE paid the aforesaid sum to SARINSKY'S pursuant to SECTION VIII, B,
         (25) of THE POLICY, as modified by the ENHACEMENTS
         ENDORSEMENT.

24.)     The relevant language contained in SECTION VIII, B, (25) of THE POLICY,
         as modified by the ENHANCEMENTS ENDORSEMENT, which ERIE relied
         upon to pay $20,000.00 to SARINSKY'S, states:

SECTION VIII, B, (25) of THE POLICY:

"We will cover the cost to extract "pollutants" from land or water on the insured premises if the release, discharge or dispersal of "pollutants" is caused by a peril insured against during the policy period. We will pay up to $10,000.00 for all "losses" throughout the year. The "loss" must be reported to use within 180 days after the "loss" or the end of the policy period, whichever is the later date."

The ENHANCEMENT ENDORSEMENT (PARAGRAPH D) increased the aforementioned $10,000.00 to $20,000.00.

25.)    ERIE'S responsibility to indemnify the insured is not limited to $20,000.00, and, the terms of THE POLICY and ENHANCEMENT ENDORSEMENT do provide the insured with indemnification for the balance of SARINSKY'S loss—that is, $139,539.87 (total remediation costs paid by SARINSKY'S) minus the $20,000.00 paid by ERIE to SARINSKY'S, minus SARINSKY'S deductible of $1,000.00, for a total of $118,539.87.

26.)    The ENHANCEMENTS ENDORSEMENT states:

"B)" [We do not cover "loss" or damage resulting from:] Discharge, dispersal, seepage, migration, release, or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a peril insured against. But, if "loss" or damage by a peril insured against results from the discharge, dispersal, seepage, migration, release, or escape of "pollutants", we will pay for the resulting damage caused by the peril insured against. (See Exhibit C, pg.3, paragraph "8")"

27.)    That the language used in SECTION VIII, B, (25) of THE POLICY, referred to in Paragraph "24.)" herein, tracks the aforementioned language in the ENHANCEMENTS ENDORSEMENT, as quoted in Paragraph "26.)" herein.

28.)    That because ERIE paid $20,000.00 to SARINSKY'S after its environmental inspections were performed, it had to have found that the release, discharge or dispersal of "pollutants" was caused by a peril insured against under SECTION VIII, B, (25) of THE POLICY.

29.)  That SARINSKY'S should be completely indemnified for its loss, as the language used in its ENHANCEMENTS ENDORSEMENT (quoted in paragraph "26.)" herein) is the same as found in SECTION VIII, B, (25) of THE POLICY, but, without a $20,000.00 ceiling.

30.)  That, on March 20, 2008, SARINSKY'S, by and through its attorneys, sent to ERIE, by certified mail, return receipt requested, a letter demanding complete indemnification from ERIE for his loss.

31.)  SARINSKY'S or its attorneys, has not received a response to the March 20, 2008, correspondence.

32.)  That, SARINSKY'S, has been damaged in the amount of ONE HUNDRED EIGHTEEN THOUSAND FIVE HUNDRED THIRTY NINE and 87/100 ($118,539.87), with legal interest measured from March 12, 2007, by reason of ERIE'S failure to pay its contracted-for insurance. Said sum represents the total remediation costs paid by SARINSKY'S, minus the $20,000.00 paid by ERIE to SARINSKY'S, minus SARINSKY'S deductible of $1,000.00.

## AS AND FOR A SECOND, SEPARATE AND DISTINCT CAUSE OF ACTION PREMISED UPON AN AMBIGIOUS INSURANCE CONTRACT AND DECLARATORY JUDGMENT

33.)  Plaintiff repeats and re-alleges paragraphs "1.)" through "32.)" herein.

34.)  That, THE POLICY and the ENHANCEMENTS ENDORSEMENT, as written, are, at the very least "ambiguous", as to whether complete indemnification (up to applicable policy limits) is available to the insured under these facts.

35.)  That, relevant New York State Law provides that in construing an insurance policy, any ambiguities must be resolved in favor of the insured and against the insurer.

36.) That, this Court should declare the subject policy of insurance is available to the Plaintiff, under these facts, for a complete indemnification for the monetary loss sustained by the Plaintiff.

37.) That, this Court should furthermore declare that ERIE must indemnify SARINSKY in the amount of ONE HUNDRED EIGHTEEN THOUSAND FIVE HUNDRED THIRTY NINE and 87/100 ($118,539.87), with legal interest measured from March 12, 2007, by reason of ERIE'S failure to pay its contracted-for insurance.

**WHEREFORE**, Plaintiff demands Judgment against the Defendants, as follows:

a.) On the First Cause of Action, awarding Plaintiff a money judgment against the Defendants in the amount of ONE HUNDRED EIGHTEEN THOUSAND FIVE HUNDRED THIRTY NINE and 87/100 DOLLARS ($118,539.87), with legal interest measured from March 12, 2007; or, alternatively,

b.) On the Second Cause of Action, declaring that the subject policy of insurance is ambiguous, as to whether complete indemnification (up to applicable policy limits) is available to the Plaintiff under these facts;

c.) On the Second Cause of Action, awarding Plaintiff a money judgment against the Defendants in the amount of ONE HUNDRED EIGHTEEN THOUSAND FIVE HUNDRED THIRTY NINE and 87/100 DOLLARS ($118,539.87), with legal interest measured from March 12, 2007;

d.) For the costs and disbursements of this action;

e.) For such other and further relief as the Court deems just and proper.

Dated: April 24, 2008
New Windsor, New York

Very truly yours,

Kevin D. Bloom, Esq.
Bloom and Bloom, P.C.
(Attorneys for Plaintiff)
530 Blooming Grove Turnpike
Post Office Box 4323
New Windsor, N.Y. 12553
Telephone: 845-561-6920

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
—————————————————————

SARINSKY'S GARAGE INC.,

                    Plaintiff,

          vs.                                    Docket No.:  _____

ERIE INSURANCE COMPANY, and
ERIE INSURANCE COMPANY OF
NEW YORK,

                    Defendants.
—————————————————————

## ANSWER TO PLAINTIFF'S COMPLAINT[1]

          Defendant, Erie Insurance Company (improperly sued as defendants Erie

Insurance Company and Erie Insurance Company of New York) by its attorneys, Rupp, Baase,

Pfalzgraf, Cunningham & Coppola LLC, as and for its answer to plaintiff's complaint, herein

states as follows:


          1.     Denies knowledge or information sufficient to form a belief with respect

to the allegations set forth in paragraphs 1, 2, 3, 6, 12, 14, 15, 16, 17, 18, 20, 21, 30, and 31 of

the complaint and those same allegations as repeated and realleged therein.

---

[1] Although plaintiff's complaint is entitled "Verified Complaint," defendants' counsel has received no verification
page relative to same. Accordingly, absent an executed verification page, defendants are treating plaintiff's
complaint as a non-verified complaint.

2.      Denies the allegations set forth in paragraphs 5, 7, 9, 23, 25, 28, 29, 32, 34, 36, and 37 of the complaint and those same allegations as repeated and realleged therein.

3.      Admits the allegations set forth in paragraphs 4 of the complaint and those same allegations as repeated and realleged therein.

4.      With respect to the allegations contained in paragraph 8 of the complaint and those same allegations as repeated and realleged therein, states that plaintiff had a contract of insurance with Erie Insurance Company, lets the terms and conditions of that contract speak for themselves, and denies knowledge or information sufficient to form a belief with respect to the remaining allegations.

5.      With respect to the allegations contained in paragraphs 10, 11, 13, 19, 24, 26, and 27 of the complaint and those same allegations as repeated and realleged therein, denies the allegations in those paragraphs and lets the terms and conditions of the insurance contract speak for themselves.

6.      With respect to the allegations contained in paragraph 22 of the complaint and those same allegations as repeated and realleged therein, admits that Erie Insurance Company issued payment to the plaintiff in the amount of $20,000 and denies knowledge or information sufficient to form a belief with respect to the remaining allegations.

7.      With respect to the allegations contained in paragraph 35 of the complaint and those same allegations as repeated and realleged therein, denies the allegations in said paragraph and respectfully refers all questions of law to the Court.

8.      Denies each and every allegation of plaintiff's complaint not hereinbefore specifically admitted, denied, or otherwise addressed.

## FIRST AFFIRMATIVE DEFENSE

9.      Plaintiff has failed to mitigate its damages with respect to the incident alleged in the complaint.

## SECOND AFFIRMATIVE DEFENSE

10.     Plaintiff's complaint fails to state a cause of action.

## THIRD AFFIRMATIVE DEFENSE

11.     Plaintiff's recovery, if any, must be reduced by the sums previously paid by defendant for the soil remediation/removal.

## FOURTH AFFIRMATIVE DEFENSE

12.    Plaintiff's recovery, if any, is barred as it has been fully compensated up to the applicable policy limit available to plaintiff for its loss as is contained in the insurance contract at issue in this case.

## FIFTH AFFIRMATIVE DEFENSE

13.    The damages alleged in the complaint were caused in whole or in part by culpable conduct attributable to the plaintiff and/or its representatives.

## SIXTH AFFIRMATIVE DEFENSE

14.    The damages alleged in the complaint were caused or contributed to, by culpable conduct attributable to others over whom defendant neither had, nor exercised any control.

## SEVENTH AFFIRMATIVE DEFENSE

15.    Plaintiff and defendant agreed to settle the claim alleged in the complaint, and plaintiff accepted $20,000 in full accord and satisfaction.

## EIGHTH AFFIRMATIVE DEFENSE

16.    Defendant gave to plaintiff the sum of $20,000 in full payment of the claim alleged in this complaint.


**WHEREFORE,** defendant Erie Insurance Company demands judgment dismissing the complaint, and adjudging and declaring that it has no obligation to indemnify plaintiff for the loss complained of, together with the costs and disbursements of this action and such other and further relief as the Court deems just and proper.


Dated: Buffalo, New York
         June 6, 2008


                              **RUPP, BAASE, PFALZGRAF,**
                              **CUNNINGHAM & COPPOLA,** LLC
                              Attorneys for Defendants

                              By:_____
                                    Marco Cercone, Esq., of Counsel
                              1600 Liberty Building
                              Buffalo, New York  14202
                              (716) 854-3400
                              S.D. N.Y. Bar #:  MC5326


TO:    **BLOOM AND BLOOM, P.C.**
         Attorneys for Plaintiff
         (Kevin D. Bloom, Esq., of Counsel)
         530 Blooming Grove Turnpike
         P.O. Box 4323
         New Windsor, New York  12553
         (845) 561-6920



Member • Erie Insurance Group
Home Office • 100 Erie Insurance Place • Erie, Pennsylvania 16530 • Toll free 1 800 458 0801 • Fax (814) 870 4408

June 4, 2008

> Re: **ERIE Claim** #010930113259
> **ERIE Policy** #Q41-5150177
> **ERIE Insured:** Sarinsky's Garage, Inc.
> **Date of Loss:** September 25, 2006

I am Thomas J. Krill, CPCU, Property & Casualty Records Examiner for the Erie Insurance Group. I hereby certify that on September 25, 2006, the enclosed Declarations, policy forms and endorsements were in effect under ERIE Policy #Q41-5150177. These are true likenesses of the documents issued to Sarinsky's Garage, Inc.

Sincerely,

Thomas J. Krill, CPCU
P & C Records Examiner
Litigation/Claims Examination Dept.
(814) 870-4650

/ad

Enclosures:
1. Revised Declarations Effective 5-1-06 to 5-1-07
2. New York Ultraflex Package Policy, ULFNY (03/01)
3. UF4510 (01/06), ULRG (07/02), IL0268 (11/05), UF8705 (06/96), ULKA (03/01), FX0002 (01/05), GU98 (09/02), IL0952 (11/02), UF4070 (02/03), UF9557 (12/99), UF4110 (02/03), ULNH (01/05), ULOA (01/05), ULLL (01/05)

Sworn to and subscribed before me

this 4th day of June, 2008.

Notary Public

> **NOTARIAL SEAL**
> JEANNE A. KIDDER, Notary Public
> City of Erie, Erie County
> My Commission Expires January 27, 2010

1639071_1.DOC

The ERIE Is Above All In Service® We guarantee it, and serve it up that way. Details inside.

BLGRP
**ERIE INSURANCE GROUP**
100 Erie Ins. Pl
Erie, PA. 16530
**ERIE.**

ERIE INSURANCE COMPANY
ULTRAFLEX POLICY

REVISED DECLARATIONS

| AGENT | ITEM 2. POLICY PERIOD | POLICY NUMBER |
|---|---|---|
| NN1171   SPENCER INS. AGY., INC. | 05/01/06 TO 05/01/07 | Q41 5150177 NY |

**ITEM 1. NAMED INSURED AND ADDRESS**                    **ITEM 3. OTHER INTEREST**

SARINSKY'S GARAGE INC
171 WINDSOR HWY
NEW WINDSOR NY  12553-6235

POLICY PERIOD BEGINS AND ENDS AT 12.01 A.M. STANDARD TIME AT THE STATED ADDRESS OF THE NAMED INSURED.

THE INSURANCE APPLIES TO THOSE PREMISES DESCRIBED AS PER THE ATTACHED SUPPLEMENTAL DECLARATIONS. THIS IS SUBJECT TO ALL APPLICABLE TERMS OF THE POLICY AND ATTACHED FORMS AND ENDORSEMENTS

DEDUCTIBLE (PROPERTY PROTECTION ONLY)- $  1,000.

COVERAGES:

| | DEPOSIT PREMIUM |
|---|---|
| PROPERTY PROTECTION - AS PER THE ATTACHED SUPPLEMENTAL DECLARATIONS | |
| 1. BUILDINGS | $  INCL |
| 2. BUSINESS PERSONAL PROPERTY AND PERSONAL PROPERTY OF OTHERS | $  INCL |
| 3. ADDITIONAL INCOME PROTECTION | $  INCL |
| 4. GLASS AND LETTERING | $ |
| 5. SIGNS, LIGHTS AND CLOCKS | $ |

LIMITS OF INSURANCE                                           $
ERIE GARAGE LIABILITY POLICY Q05-5180139 IN EFFECT

OPTIONAL COVERAGES

| | |
|---|---|
| MECHANICAL & ELECTRICAL BREAKDOWN | $  INCL |
| ENHANCEMENT ENDORSEMENT - AUTO REPAIR SHOPS ENDORSEMENT | $  INCL |
| NY STATE MANDATED FIRE INSURANCE FEE | $    33.11 |
| TOTAL DEPOSIT PREMIUM  - - - - - | $ 3,647.11 |

APPLICABLE FORMS - SEE SCHEDULE OF FORMS

SEE REVERSE SIDE                    KMR       04/03/06

```
080603
02
SARINSKY'S GARAG
     062084C141
```

### SUPPLEMENTAL DECLARATIONS
### LOCATION  1, BUILDING  1

LOCATION OF PREMISES
-------------------

  171 WINDSOR HIGHWAY, NEW WINDSOR,
ORANGE CO, NY  12553
(R/A VAILS GATE FD)

OCCUPANCY/OPERATIONS
--------------------

USED AUTO SALES AND MINOR REPAIR
NO SPRAY PAINTING

INTEREST OF NAMED INSURED IN SUCH PREMISES - OWNER

PROPERTY PROTECTION

| COVERAGES | CO-INS % | AMOUNT OF INSURANCE |
|---|---|---|
| 1. BUILDINGS | 100 | $   527,500 |
| 2. BUSINESS PERSONAL PROPERTY AND    PERSONAL PROPERTY OF OTHERS | 100 | $   220,000 |
| 3. ADDITIONAL INCOME PROTECTION      OCCURRENCE | | $   300,000 |

OPTIONAL COVERAGES - PROPERTY PROTECTION
MECHANICAL & ELECTRICAL BREAKDOWN             $        INCL

77                    CONTINUED ON NEXT PAGE

080603
02
SARINSKY'S GARAG
    062084C141

                                        ERIE INSURANCE COMPANY
                                           ULTRAFLEX POLICY

            REVISED DECLARATIONS


    NN1171    SPENCER INS. AGY., INC.    05/01/06 TO 05/01/07    Q41 5150177 NY


    SARINSKY'S GARAGE INC
    171 WINDSOR HWY
    NEW WINDSOR NY  12553-6235


                        SCHEDULE OF FORMS

| FORM NUMBER | EDITION DATE | DESCRIPTION |
| --- | --- | --- |
| ULFNY | 03/01 | ULTRAFLEX PACKAGE POLICY |
| UF4510 | 01/06 * | ATTENTION POLICYHOLDERS |
| ULRG | 07/02 | EXCLUSION - COLLAPSE |
| IL0268 | 11/05 * | NEW YORK CHANGES - CANCELLATION AND NONRENEWAL |
| UF8705* | 06/96 | IMPORTANT NOTICE - NO FLOOD COVERAGE |
| ULKA | 03/01 | EXCLUSION - AUTOMOBILE REPAIR, SERVICE, SALES, RENTAL OR LEASING |
| FX0002 | 01/05 | ULTRAFLEX COMMERCIAL PROPERTY COVERAGE PART - NEW YORK |

| GU98 | 09/02 | NEW YORK AMENDATORY ENDORSEMENT |
| IL0952 | 11/02 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| UF4070* | 02/03 | POLICYHOLDER DISCLOSURE NOTICE TERRORISM INSURANCE COVERAGE |
| UF9557 | 12/99 | IMPORTANT NOTICE TO NEW YORK POLICYHOLDERS |
| UF4110 | 02/03 | IMPORTANT NOTICE TO POLICYHOLDERS - TERRORISM COVERAGE - PROPERTY |
| ULNH | 01/05 | MECHANICAL AND ELECTRICAL BREAKDOWN COVERAGE |
| ULOA | 01/05 | PRODUCTION OR PROCESS MACHINERY-DEDUCTIBLE |
| ULLL | 01/05 | AUTO REPAIR SHOPS ERIEPLACEABLE ENHANCEMENT ENDORSEMENT |

KMR     04/03/06

New York

# Ultraflex
# Package Policy



 Erie Insurance
Company

Member · Erie Insurance Group
"The Pledge of The Insurance World"

# AGREEMENT

In return for your timely premium payment and your compliance with all of the provisions of this policy, we agree to provide the coverages you have purchased. Your coverages and limits of protection are shown in the Declarations, which are part of this policy.

This agreement is made in reliance on the information you have given us, and is subject to all of the terms of this policy.

This policy and all endorsements to it constitute the entire agreement between you and us.

## GENERAL POLICY CONDITIONS

### 1. AUTOMATIC RENEWAL POLICY

Your policy will be automatically renewed at the end of the policy period, unless terminated by you or us in accordance with the steps explained in the Cancellation Condition.

Each year, we will send you a Renewal Certificate which shows the premium due for the next policy period.

This is a service that we provide for you so that your insurance protection does not stop.

If you do not want the renewal policy, you must mail our Agent or us written notice in advance of the new policy period. If you do not notify us, your policy remains in effect. You must pay us the earned premium due us for this time.

### 2. CANCELLATION

**Your Right to Cancel or Refuse Renewal**

You may cancel this policy or any coverage by mailing or delivering to our Agent or us written notice stating at what future date you want the cancellation to take effect. We may waive these requirements by confirming the date of cancellation to you in writing.

**Our Right to Cancel or Refuse to Renew**

We may cancel or refuse to renew by mailing you written notice stating the effective date of our action. Our action will comply with the laws of the state in which your principal office is located. The cancellation will not take effect until at least 30 days (Maryland - 45 days, except for nonpayment of premium - 30 days) after we send it. For states that require a different number of days for notification of cancellation or non-renewal, or specify the reasons for cancellation or non-renewal, an Amendatory Endorsement is attached.

We reserve the right to cancel for your non-compliance with our premium payment plans. We do not waive our right to cancel, even if we have accepted prior late payments.

**Method of Giving Notice**

Mailing notice to the address shown on the Declarations will be sufficient proof of notice. The policy period will end on the date and time stated in the notice.

**Return of Premium**

If your policy is cancelled by you or us, we will return the pro rata unused share of your premium. Cancellation will be effective even if we have not given or offered the return premium.

### 3. CONCEALMENT, FRAUD OR MISREPRESENTATION

We do not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any loss or damage for which coverage is sought under this policy.

### 4. COOPERATION

You agree to cooperate with us by:

  a. truthfully completing and promptly returning questionnaires and audit forms about this insurance;

  b. permitting and helping with inspections and audits; and

  c. complying with specific recommendations to improve your risk.

### 5. HOW YOUR POLICY MAY BE CHANGED

This policy conforms to the laws of the state in which your principal office is located. If the laws of the state change, this policy will comply with these changes.

Your policy may be changed by asking us. Your request must contain enough information to identify you. Asking our Agent is the same as asking us. If we agree with your request, we will then issue an Amended Declarations.

We will give you the benefit of any change in coverage made by us, if it does not require additional premium. This change will be effective as of the date we implement the change for you in your state.

2

## 6. INCREASE IN HAZARD

Unless we agree beforehand, coverage is suspended if the hazard is substantially increased by any means within the control of the insured.

## 7. INSPECTION AND AUDIT

We have the right but are not obligated to:

    a. make inspections and surveys at any time;

    b. give you reports on the conditions we find; and

    c. recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to provide for the health or safety of workers or the public. We do not warrant that your property or operations are safe, healthful or in compliance with any law, regulation, code or standard. Inspections, surveys, reports or recommendations are for our benefit only.

This condition also applies to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

We may examine and audit your books and records at any time during or within three years after the policy period, as they relate to this insurance.

The premium of this policy may be provisional. At the end of each policy period, we will compute the earned premium for that period. An audit to determine the final premium will be completed within 180 days after the expiration date of the policy and it may be waived. If the estimated premium was too low, you are obligated to pay additional premiums computed with our rules and rates. If the estimated premium was too high, we will return the unearned premium subject to any minimum premium that apply.

## 8. OUR RIGHT TO RECOVER FROM OTHERS

After we make a payment under this policy, we will have the right to recover from anyone else held responsible. This right will not apply under Property Protection if you have waived it in writing prior to loss. Any insured is required to transfer this right to us, and do nothing to harm this right. Anyone receiving payment from us and from someone else for the same loss will reimburse us up to our payment.

## 9. POLICY ACCEPTANCE

By accepting this policy, you agree that the statements on the Declarations are accurate and complete and are based on the facts you have given us. This policy is issued in reliance on these facts.

## 10. PREMIUMS

The first Named Insured shown in the Declarations:

    a. Is responsible for the payment of all premiums; and

    b. Will be the payee for any return premiums we pay.

## 11. PRIORITY

At our option, this insurance will first protect you, and then others we protect.

## 12. TIME OF INCEPTION

If this policy replaces another policy ending at noon on the date of this policy, we will protect you as of that time.

## 13. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

3

This policy has been signed on our behalf at Erie, Pennsylvania by our President and Secretary. If require by law, it has been countersigned on the Declarations by our authorized Agent.



James J. Tamous
Secretary

John J. Stenburg
President



**Erie Insurance®**

Home Office · 100 Erie Insurance Place · Erie, PA 16530 · 814 870 2000
Visit our Website at www.erieinsurance.com

ULF-NY (Ed. 3/01) UF-8429                    4



**ERIE INSURANCE GROUP**

BUSINESS CATASTROPHE LIABILITY
COMMERCIAL SELECT OUTPUT PROGRAM
COMMERCIAL FIRE
COMMERCIAL CRIME
FIVESTAR CONTRACTORS
COMMERCIAL GENERAL LIABILITY
COMMERCIAL INLAND MARINE
ULTRAFLEX PACKAGE
ULTRAPACK BUSINESS
ULTRASURE FOR PROPERTY OWNERS
WORKERS COMPENSATION
UF-4510 (Ed. 1/06)

## ATTENTION POLICYHOLDERS

The service charge applied and paid to Erie Indemnity Company for premium payment plans C, D, Monthly and Account Billing will increase from $3.00 to $5.00. No service charge will apply to payment plans A and B if payments are made in accordance with the terms of the plan.



**ERIE INSURANCE GROUP**

FIVESTAR CONTRACTORS
ULTRAFLEX PACKAGE
ULTRAPACK BUSINESS
ULTRASURE FOR PROPERTY OWNERS
UL-RG (Ed. 7/02) UF-3863

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# EXCLUSION - COLLAPSE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

The following is added to Paragraph B. Coverages 1, 2 and 3 of Section III - Exclusions

We do not cover under Building(s) (Coverage 1), Business Personal Property and Personal Property of Others (Coverage 2), and Income Protection (Coverage 3) (Ultrasure - Rental Income Protection) "loss" caused by or resulting from collapse, except as provided in Section IV - Additional Coverage - Collapse.

But if collapse results in covered "loss" at the premises described in the "Declarations", we will pay for "loss" or damage caused by that covered cause of "loss".

1



**INTERLINE**
IL 02 68 (Ed. 11/05) UF-3032

**ERIE INSURANCE GROUP**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs 1., 2., 3. and 5. of the **Cancellation Common Policy Condition** are replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this entire policy by mailing or delivering to us advance written notice of cancellation.

2. **Cancellation Of Policies In Effect**

   a. **60 Days Or Less**

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   1) 30 days before the effective date of cancellation if we cancel for any reason not included in Paragraph A.2.a.2) below.

   2) 15 days before the effective date of cancellation if we cancel for any of the following reasons:

      a) Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

      b) Conviction of a crime arising out of acts increasing the hazard insured against;

      c) Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim;

      d) After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

   e) Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, that results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, that causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

   f) Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

   g) A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code; or

   h) Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If we cancel for this reason, you may make a written request to the Insurance Department, within 10 days of receipt of this notice, to review our can-

1

cellation decision. Also, we will simultaneously send a copy of this cancellation notice to the Insurance Department.

**b. For More Than 60 Days**

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel only for any of the reasons listed in Paragraph A.2.a.2) above, provided:

1) We mail the first Named Insured written notice at least 15 days before the effective date of cancellation; and

2) If we cancel for nonpayment of premium, our notice of cancellation informs the first Named Insured of the amount due.

3. We will mail or deliver our notice, including the reason for cancellation, to the first Named Insured at the address shown in the policy and to the authorized agent or broker.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B. The following is added to the Cancellation Common Policy Condition:**

7. If one of the reasons for cancellation in Paragraphs A.2.a.2) or D.2.b.2) exists, we may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

**C. The following conditions are added:**

**1. Nonrenewal**

If we decide not to renew this policy we will send notice as provided in Paragraph C.3. below.

**2. Conditional Renewal**

If we conditionally renew this policy subject to a:

a. Change of limits;

b. Change in type of coverage;

c. Reduction of coverage;

d. Increased deductible;

e. Addition of exclusion; or

f. Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

we will send notice as provided in Paragraph C.3. below.

**3. Notices Of Nonrenewal And Conditional Renewal**

a. If we decide not to renew this policy or to conditionally renew this policy as provided in Paragraphs C.1. and C.2. above, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 60 but not more than 120 days before:

1) The expiration date; or

2) The anniversary date if this is a continuous policy.

b. Notice will be mailed or delivered to the first Named Insured at the address shown in the policy and to the authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

d. If we violate any of the provisions of Paragraphs C.3.a., b. or c. above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

1) Coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60 day period, has replaced the coverage or elects to cancel.

2) On or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

e. If you elect to renew on the basis of a late conditional renewal notice, the terms, conditions and rates set forth in such notice shall apply:

1) Upon expiration of the 60 day period; or

2) Notwithstanding the provisions in Paragraphs d.1) and d.2), as of the renewal date of the policy if we send the first Named Insured the conditional renewal notice at least 30 days prior to the expiration or anniversary date of the policy.

f. We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or is no longer desired.

**D. The following provisions apply when the Commercial Property Coverage Part, the Farm Coverage Part or the Capital Assets Program (Output Policy) Coverage Part is made a part of this policy:**

1. Items D.2. and D.3. apply if this policy meets the following conditions:

2

a. The policy is issued or issued for delivery in New York State covering property located in this state; and

b. The policy insures:

1) For loss of or damage to structures, other than hotels or motels, used predominantly for residential purposes and consisting of no more than four dwelling units; or

2) For loss of or damage to personal property other than farm personal property or business property; or

3) Against damages arising from liability for loss of, damage to or injury to persons or property, except liability arising from business or farming; and

c. The portion of the annual premium attributable to the property and contingencies described in 1.b. exceeds the portion applicable to other property and contingencies.

2. Paragraph 2. of the Cancellation Common Policy Condition is replaced by the following:

**2. Procedure And Reasons For Cancellation**

a. We may cancel this entire policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

1) 15 days before the effective date of cancellation if we cancel for nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due; or

2) 30 days before the effective date of cancellation if we cancel for any other reason.

b. But if this policy:

1) Has been in effect for more than 60 days; or

2) Is a renewal of a policy we issued:

we may cancel this policy only for one or more of the following reasons:

1) Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

2) Conviction of a crime arising out of acts increasing the risk of loss;

3) Discovery of fraud or material misrepresentation in obtaining the policy or in making a claim;

4) Discovery of willful or reckless acts or omissions increasing the risk of loss;

5) Physical changes in the covered property that make that property uninsurable in accordance with our objective and uniformly applied underwriting standards in effect when we:

a) Issued the policy; or

b) Last voluntarily renewed the policy;

6) The Superintendent of Insurance's determination that continuing the policy would violate Chapter 28 of the Insurance Law; or

7) Required pursuant to a determination by the Superintendent of Insurance that the continuation of our present premium volume would be hazardous to the interests of our policyholders, our creditors or the public.

3. The following are added:

a. **Conditional Continuation**

Instead of cancelling this policy, we may continue it on the condition that:

1) The policy limits be changed; or

2) Any coverage not required by law be eliminated.

If this policy is conditionally continued, we will mail or deliver to the first Named Insured written notice at least 20 days before the effective date of the change or elimination. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

b. **Nonrenewal**

If, as allowed by the laws of New York State, we:

1) Do not renew this policy; or

2) Condition policy renewal upon:

a) Change of limits; or

b) Elimination of coverage;

we will mail or deliver written notice of nonrenewal or conditional renewal:

a) At least 45 days; but

b) Not more than 60 days;

before the expiration date of the policy. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**E.** The following is added to the Farm Property - Other Farm Provisions Form - Additional Coverages, Conditions, Definitions, the Commercial Property Coverage Part and the Capital Assets Program (Output Policy) Coverage Part:

When the property is subject to the Anti-Arson Application in accordance with New York Insurance Department Regulation No. 96, the following provisions are added:

If you fail to return the completed, signed and affirmed anti-arson application to us:

1. Or our broker or agent within 45 days of the effective date of a new policy, we will cancel this entire policy by giving 20 days' written notice to you and to the mortgageholder shown in the Declarations.

2. Before the expiration date of any policy, we will cancel the policy by giving written notice to you and to the mortgageholder shown in the Declarations at least 15 days before the effective date of cancellation.

The cancellation provisions set forth in E.1. and E.2. above supersede any contrary provisions in this policy including this endorsement.

If the notice in E.1. or E.2. above is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

**F.** The following applies to the Commercial Property Coverage Part, the Farm Coverage Part and the Capital Assets Program (Output Policy) Coverage Part:

Paragraphs f. and g. of the **Mortgageholders** Condition are replaced by the following:

### f. Cancellation

1) If we cancel this policy, we will give written notice to the mortgageholder at least:

a) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

b) 30 days before the effective date of cancellation if we cancel for any other reason.

2) If you cancel this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, cancellation will become effective on the later of:

a) The effective date of cancellation of the insured's coverage; or

b) 10 days after we give notice to the mortgageholder.

### g. Nonrenewal

1) If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

2) If you elect not to renew this policy, we will give written notice to the mortgageholder. With respect to the mortgageholder's interest only, nonrenewal will become effective on the later of:

a) The expiration date of the policy; or

b) 10 days after we give notice to the mortgageholder.

**G.** The following provisions apply when the following are made a part of this policy:

Commercial General Liability
   Coverage Part
Farm Liability Coverage Form
Liquor Liability Coverage Part
Products/Completed Operations
   Liability Coverage Part

1. The aggregate limit of this policy as shown in the Declarations will be increased in proportion to any policy extension provided in accordance with Paragraph C.3.d. above.

2. The last sentence of Limits Of Insurance does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

Copyright, ISO Properties, Inc., 2005

4



**ERIE INSURANCE GROUP**

ULTRAFLEX PACKAGE
ULTRAPACK BUSINESS
ULTRASURE FOR PROPERTY OWNERS
ULTRASURE FOR LANDLORDS
FIVESTAR CONTRACTORS'
COMMERCIAL PROPERTY
HOMEPROTECTOR
DWELLING PROPERTY
UF-8705 (Ed. 6/96)

## IMPORTANT NOTICE - NO FLOOD COVERAGE

Your basic policy covers losses from many perils. However, it **DOES NOT** provide coverage for flood loss.

Insurance covering flood loss is generally available through the National Flood Insurance Program.

In an effort to serve you, information about flood insurance and the National Flood Insurance Program can be provided by your ERIE Agent.

1



**ERIE INSURANCE GROUP**

COMMERCIAL GENERAL LIABILITY
ULTRAFLEX PACKAGE
ULTRAPACK BUSINESS
UL-KA (Ed. 3/01) UF-6761

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - AUTOMOBILE REPAIR, SERVICE, SALES, RENTAL, OR LEASING

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:

**Auto Repair, Service, Sales, Rental, or Leasing**

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of repair, service, sales, rental, or leasing of "autos".

1

ULTRAFLEX PACKAGE
FX-00-02 (Ed. 1/05) UF-3554



ERIE INSURANCE GROUP

# ULTRAFLEX COMMERCIAL PROPERTY COVERAGE PART

# NEW YORK

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the "Declarations". The words "we", "us", and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **Section XI – Definitions**.

## SECTION I - COVERAGES

## INSURING AGREEMENT

We will pay for direct physical "loss" of or damage to Covered Property at the premises described in the "Declarations" caused by or resulting from any Covered Cause of Loss.

## BUILDING(S) - COVERAGE 1

### A. Covered Property

Building(s) means buildings described in the "Declarations" and anything permanently attached. It also includes:

1. Building equipment and fixtures servicing the premises;

2. Personal property you have for the service and maintenance of the buildings and premises including, but not limited to the following:

   a. Fire extinguishing equipment;

   b. Outdoor furniture;

   c. Floor coverings;

   d. Appliances used for refrigerating, ventilating, cooking, dishwashing, or laundering; and

   e. Flag poles and outdoor lights.

3. Glass which you own. The glass must be part of the building or in the building described in the "Declarations", including glass in wall cases.

Our payment for "loss" to glass will also include:

   a. Replacement of building glass with safety glazing materials when made necessary by an ordinance or building code;

   b. Replacement of lettering, ornamentation or burglar alarm foil;

   c. Repair or replacement of frames;

   d. Installation of temporary coverings; and

   e. Removal of obstructions.

### B. Property Not Covered

Building(s) does not apply to:

1. Fences, walks, and unattached outbuildings not described in the "Declarations", except as provided in Extensions of Coverage - A.3.;

2. Outdoor swimming pools and equipment pertaining thereto not described in the "Declarations";

3. Bulkheads, pilings, piers, wharves or docks not described in the "Declarations";

4. Bridges, roadways, patios or other paved surfaces;

5. Retaining walls that are not part of a building, or not described in the "Declarations";

6. The cost of excavations, grading, backfilling or filling;

7. Trees, shrubs, lawns, and plants, except as provided in Extensions of Coverage - A.9.;

8. Unattached outdoor signs, except as provided in Extensions of Coverage - A.2.;

9. Underground pipes, flues or drains;

10. Land (including land on which covered property is located) or water; and

11. Property specifically insured in whole or in part by this or any other insurance.

### C. Automatic Adjustment of Coverage Amounts

This policy provides you with a guard against the effect of inflation on construction costs for Building(s) (Coverage 1).

We will keep track of costs and at the next policy period we will adjust the amount of your building coverage if necessary. Your premium will be adjusted at each policy period to reflect any change in the amount of insurance.

During the policy period, if there is an increase in construction costs and a "loss" occurs, we will reflect the increase in the amount of insurance for Building(s) (Coverage 1) before making payment. There will be no charge for this additional coverage.

If the amount of insurance shown in the "Declarations" for Building(s) (Coverage 1) is inadequate, these adjustments may not be sufficient to provide full recovery should a "loss" occur.

## BUSINESS PERSONAL PROPERTY AND PERSONAL PROPERTY OF OTHERS - COVERAGE 2

### A. Covered Property

Business Personal Property and Personal Property of Others means:

1. Personal property pertaining to your business, professional or institutional activities, including leased property you are contractually responsible to insure;

2. Personal property of others that is in your care, custody or control;

3. Labor, materials or services furnished or arranged by you on personal property of others;

4. Your use interest as a tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

   a. Made a part of the building or structure you occupy but do not own; and

   b. You acquired or made at your expense but cannot legally remove;

5. Attached exterior signs which you own or which are in your care, custody, or control and for which you are responsible. The attached exterior signs must be part of the building described in the "Declarations"; and

6. Glass which is in your care, custody, or control and for which you are responsible. The glass must be part of the building described in the "Declarations", including glass in wall cases.

   Our payment for "loss" to glass will also include:

   a. Replacement of building glass with safety glazing materials when made necessary by an ordinance or building code;

   b. Replacement of lettering, ornamentation or burglar alarm foil;

   c. Repair or replacement of frames;

   d. Installation of temporary coverings; and

   e. Removal of obstructions.

while in or on the described buildings, or in the open, or in a vehicle, on the premises described in the "Declarations" or within 1,500 feet thereof.

Our payment for "loss" of or damage to personal property of others will only be made to the owner of the property.

### B. Property Not Covered

Business Personal Property and Personal Property of Others does not apply to:

1. "Automobiles" held for sale;

2. Vehicles or self-propelled machines (including "aircraft" or watercraft) that:

   a. Can be licensed for use on public roads, except vehicles that are solely used to service the premises described in the Declarations; or

   b. Are operated principally away from the premises described in the "Declarations".

   This paragraph does not apply to:

   a. Vehicles or self-propelled machines or "automobiles" you manufacture, process or warehouse;

   b. Vehicles or self-propelled machines, other than "automobiles", you hold for sale;

   c. Rowboats or canoes out of water at the premises described in the "Declarations"; or

   d. Trailers, but only to the extent provided for in the Extensions of Coverage - B.23.

3. Unattached exterior signs, lights and clocks, except as provided in Extensions of Coverage - A.2.;

4. "Money" and "securities", except as provided in Extensions of Coverage - B.4., B.6., B.11., B.20. and B.21.;

5. Your property sold on installment or deferred payment plans after delivery to customers;

6. Household and personal articles of the insured, the insured's partners, members, or managers of a limited liability company, the insured's officers, or the insured's employees, except as provided in Extensions of Coverage - B.24.;

7. Trees, shrubs, lawns and plants, except as provided in Extensions of Coverage - A.9.;

8. Crops and growing crops while outside of the building(s);

9. Contraband, or property in the course of illegal transportation or trade;

10. The cost to research, replace or restore the information on valuable papers and records including those which exist on "electronic data" or magnetic media, except as provided in Extensions of Coverage - B.30. Valuable papers and records include proprietary information; written, printed, or inscribed documents and records; including books, maps, films, abstracts, drawings, deeds, mortgages, card index systems, and manuscripts.

11. Fine arts, except as provided in Extensions of Coverage - B.14. Fine arts include paintings; etchings; pictures; tapestries; rare or art glass; art glass windows; valuable rugs; statuary; sculptures; antique furniture; antique jewelry; porcelains; and similar property of rarity, historic value, or artistic merit.

12. Animals, unless owned by others and boarded by you or if owned by you as stock while inside the building(s) described in the "Declarations";

13. "Mobile equipment";

a. While being used or stored away from the premises described in the "Declarations"; or

b. While at or being transported to or from job sites away from the premises described in the "Declarations"; and

14. Property specifically insured in whole or in part by this or any other insurance.

## ADDITIONAL INCOME PROTECTION - COVERAGE 3

### A. Additional Income Protection Coverage

Income Protection means loss of "income" and "rental income" you sustain due to partial or total "interruption of business" resulting directly from "loss" to the buildings, or business personal property or personal property of others described in the "Declarations" from a peril insured against. "Loss" or damage to business personal property and personal property of others also includes covered property in the open, or in a vehicle on the premises described in the "Declarations", or within 1,500 feet thereof.

If you are a tenant, your premises is the portion of the building described in the "Declarations" which you rent, lease, or occupy including:

1. All routes within the building to gain access to the described premises; and

2. Your business personal property and personal property of others in the open, or in a vehicle on the premises described in the "Declarations", or within 1,500 feet thereof.

You are required to resume normal business operations as promptly as possible and shall use all available means to eliminate any unnecessary delay.

### B. Extra Expenses Coverage

Extra expenses coverage is provided at the premises described in the "Declarations" only if the "Declarations" show that Additional Income Protection Coverage applies to that premises.

"Extra expense" means necessary expenses you incur due to partial or total "interruption of business" resulting directly from "loss" to the buildings, or business personal property or personal property of others described in the "Declarations" from a peril insured against. "Loss" or damage to business personal property and personal property of others also includes covered property in the open, or in a vehicle on the premises described in the "Declarations", or within 1,500 feet thereof.

We will pay necessary actual and necessary "extra expenses" (other than the expense to repair or replace property) sustained by you to:

1. Avoid or minimize the "interruption of business" and to continue your business operations:

   a. At the premises described in the "Declarations"; or

   b. At replacement premises or at temporary locations, including:

      1) Relocation expenses, and

      2) Costs to equip and operate the replacement or temporary locations.

2. Minimize the "interruption of business" if you cannot continue your business operations to the extent it reduces the amount of loss that would have been payable under loss of "income" and "rental income".

We will not pay any "loss" or damage to your buildings, or business personal property and personal property of others. We also will not pay the cost of research or any other expense to replace or restore your valuable papers and records. We will pay the extra cost to repair or replace your covered property and the amount to research, replace or restore the lost information on damaged valuable papers and records to the extent it reduces the amount of loss that would have been payable under loss of "income" and "rental income".

### C. Additional Coverages

1. Civil Authority

   We will pay loss of "income" and "rental income" you sustain and necessary "extra expenses" caused by action of civil authority that prohibits access to the described premises resulting directly from "loss" to property, other than at the described premises, caused by a peril insured against.

   This coverage for loss of "income" and "rental income" will begin 72 hours after the time of the action of civil authority and will apply for a period of up to three consecutive weeks after coverage begins.

   The coverage for "extra expenses" will begin immediately after the time of the action of civil authority and will apply for a period of up to 24 consecutive days after the time of the action of civil authority.

2. Full Resumption of Operations

   We will also pay your actual loss of "income" and "rental income" for an additional 30 days if your "income" and "rental income" after operations are resumed is less than your "income" and "rental income" before the loss. The additional amount we will pay will start after the later of the following times:

   a. The date on which the liability for Additional Income Protection - Coverage 3 would terminate if this clause had not been included; or

   b. The date on which repair, replacement or rebuilding of such part of the damaged or destroyed property described in the "Declarations" is actually completed.

### D. Amount of Insurance

We will pay the actual loss of "income" and "rental income" sustained by you up to the Occurrence Limit shown in the "Declarations".

The "income" and "rental income" loss sustained by you shall not exceed:

1. The actual reduction of "income" and "rental income", during the "interruption of business;" and

2. The reduction in rents received less charges and expenses which do not necessarily continue during

3

the "interruption of business", or during the period when the tenant cannot inhabit the premises.

We will pay up to $100 a day, for seven days, after your business is suspended to cover loss of "income" and "rental income" sustained by you while you are determining your actual income protection loss. The amount paid will be subtracted from your actual loss of "income" and "rental income".

Payment of loss of "income" and "rental income" is not limited by the end of the policy period.

Payments under the following coverages will not increase the applicable Occurrence Limit for Additional Income Protection:

1. Extra Expenses Coverage;
2. Civil Authority; or
3. Full Resumption of Operations.

## GLASS AND LETTERING - COVERAGE 4

### A. Covered Property

Glass and Lettering means for the premium shown in the "Declarations", the deductible does not apply to glass covered under Building(s) (Coverage 1).

## SIGNS, LIGHTS AND CLOCKS - COVERAGE 5

### A. Covered Property

The $5,000 amount of insurance provided in Extensions of Coverage - Exterior Signs, Lights, and Clocks - **A.2.** is increased by the amount shown in the "Declarations" for those items that are separately scheduled and are subject to the exclusions listed in **Section III - Exclusions** and **Section VIII - Extensions of Coverage**.

The maximum amount of insurance we will pay for any one covered "loss" is the:

1. $5,000 amount of insurance shown in the Extensions of Coverage - Exterior Signs, Lights and Clocks - **A.2.**; and
2. The amount of insurance shown in the "Declarations".

If a deductible amount for **Signs, Lights, or Clocks - Coverage 5** is shown in the Declarations, this deductible amount replaces the $100 deductible amount shown in Paragraph A. 2. of Exterior Signs, **Lights and Clocks** of Section VIII - Extensions of Coverage.

## SECTION II - PERILS INSURED AGAINST

## BUILDING(S) - COVERAGE 1

## BUSINESS PERSONAL PROPERTY AND PERSONAL PROPERTY OF OTHERS - COVERAGE 2

## ADDITIONAL INCOME PROTECTION - COVERAGE 3

### A. Covered Cause of Loss

This policy insures against risk of "loss" under Building(s) (Coverage 1), Business Personal Property and Personal Property of Others (Coverage 2) and Additional Income Protection (Coverage 3), except as excluded in this policy.

## GLASS AND LETTERING - COVERAGE 4

### A. Covered Cause of Loss

For Glass and Lettering this policy insures against risks of "loss" to glass, except fire and scratching, and as excluded in this policy.

## SECTION III - EXCLUSIONS

### A. Coverages 1, 2, 3, 4 and 5

We do not cover under Building(s) (Coverage 1); Business Personal Property and Personal Property of Others (Coverage 2); Additional Income Protection (Coverage 3); Glass and Lettering (Coverage 4); and Signs, Lights and Clocks (Coverage 5) "loss" or damage caused directly or indirectly by any of the following. Such "loss" or damage is excluded regardless of any cause or event that contributes concurrently or in any sequence to the "loss":

1. Deterioration or depreciation.

2. Intentional loss, meaning any "loss" arising from an act committed by, or at the direction of the insured with the intent to cause a "loss".

3. "Loss" or damage caused by or resulting from any of the following:

   a. By weather conditions, but only if weather conditions contribute in any way with a peril excluded in Part A. to produce the "loss";

   b. By acts or decisions, including the failure to act or decide, of anyone;

   c. By faulty, inadequate or defective:

      1) Planning, zoning, development, surveying;

      2) Design, specifications, workmanship, repair, construction, renovating, remodeling, grading, compaction;

      3) Materials used in repair, construction, renovation, or remodeling;

      4) Maintenance;

   of property whether on or off the insured premises by anyone, but if "loss" by a peril insured against results, we will pay for the ensuing loss.

4. Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of "loss".

5. Earth Movement

   a. Earthquake, including any earth sinking, rising or shifting related to such event;

   b. Landslide, including any earth sinking, rising or shifting related to such event;

4

c. Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

d. Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in a. through d. above, results in fire, explosion, sprinkler leakage, volcanic action, or building glass breakage, we will pay for the "loss" or damage caused by such perils.

Volcanic action means direct "loss" resulting from the eruption of a volcano when the "loss" or damage is caused by:

a. Airborne volcanic blast or airborne shock waves;

b. Ash, dust or particulate matter; or

c. Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

This does not include the cost to remove ash, dust or particulate matter that does not cause direct "loss" to the covered property.

This exclusion does not apply to property being transported.

6. Water

a. Flood, surface water, waves, tidal water or tidal wave, overflow of any body of water or their spray, all whether driven by wind or not;

b. By water or sewage which backs up through sewers or drains, or which enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water which is drained from the foundation area;

c. Water under the ground surface pressing on, or flowing or seeping through:

1) Foundations, walls, floors or paved surfaces;

2) Sidewalks, or driveways;

3) Basements, whether paved or not; or

4) Doors, windows or other openings.

But if Water, as described in 6.a. through 6.c. results in fire, explosion, sprinkler leakage, volcanic action, or building glass breakage, we will pay for the "loss" or damage caused by such perils.

This exclusion does not apply to property being transported.

7. War

a. War including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

With respect to any action that comes within the terms of this exclusion and involves nuclear reaction or radiation, or radioactive contamination, this war exclusion supersedes Paragraph A. 9. - Exclusions of Section - III the nuclear hazard exclusion.

8. Seizure or destruction of covered property by order of governmental authority, except as provided in Extensions of Coverage - B.3..

We will also cover "loss" caused by acts of destruction ordered by governmental authority to prevent the spread of a fire.

9. Nuclear reaction or radiation, or radioactive contamination unless fire ensues, and then only for ensuing "loss".

10. By the enforcement of any law or ordinance regulating the construction, use or repair of any property, or requiring the tearing down of any property, including the cost of removing its debris, except as provided in Extensions of Coverage - B.3., B.8. and B.9..

11. The failure of power or other utility service supplied to the insured premises, however caused, if the failure occurs away from the insured premises, except as provided in Extensions of Coverage - A.6. and A.8., unless a covered "loss" ensues, and then only for ensuing "loss". Failure includes lack of sufficient capacity and reduction in supply.

Exclusions A.5. through A.11. apply whether or not the loss event results in widespread damage or affects a substantial area.

B. Coverages 1, 2 and 3

We do not cover under Building(s) (Coverage 1), Business Personal Property and Personal Property of Others (Coverage 2) and Additional Income Protection (Coverage 3) "loss" caused:

1. By

a. Wear and tear, rust or corrosion;

b. Change in flavor, color, texture or finish;

c. Damp or dry air;

d. Inherent vice;

e. Smog;

f. Latent or hidden defect;

g. Marring or scratching;

h. Smoke, vapor or gases from agricultural or industrial operations;

i. Settling, cracking, shrinking, bulging or expansion of pavements, foundations, walls, floors, roofs or ceilings;

j. Termites, vermin, insects, rodents, birds, skunks, raccoons, spiders, or reptiles;

k. Or to machines and machinery by rupture, bursting or disintegration of their rotating or moving parts resulting from centrifugal or reciprocating force; or

l. Mechanical breakdown;

5

unless a covered "loss" ensues, and then only for ensuing "loss".

2. By discharge, dispersal, seepage, migration, release, or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril insured against. But if "loss" or damage by a peril insured against results from the discharge, dispersal, seepage, migration, release, or escape of "pollutants", we will pay for the resulting damage caused by the peril insured against;

3. By mysterious disappearance, unexplained loss or inventory shortage. We will accept inventory records as a means of proving the amount of a covered "loss".

4. By continuous or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

5. By freezing by temperature reduction to plumbing, heating, air conditioning or other equipment or appliances (except fire protective systems) or by water, other liquids, powder or molten material that leaks or flows from such items while the described building is vacant for more than 60 consecutive days, unless you have exercised reasonable care to:

   a. Maintain heat in the building; or

   b. Shut off the water supply and drain the system or appliance of water.

   We will pay the cost to tear out and replace any part of the building described in the "Declarations" to repair damage to the system or appliance from which the water, other liquids, powder or molten material escapes.

   We will not pay for the cost to repair or replace any defect in the system or appliance that caused the "loss" or damage.

6. By collapse, except as provided in Section IV - Additional Coverages - Collapse. But if collapse results in a peril insured against at the premises described in the "Declarations", we will pay for the "loss" or damage caused by the peril insured against.

7. By explosion of, including resulting damage to, steam boilers, steam pipes, steam turbines or steam engines if owned by, leased by or operated under your control. We also do not cover damage to these caused by any condition or occurrence within the boilers, pipes, turbines or engines. We will pay for "loss" from the explosion of gases or fuel within the combustion chamber, flues or passages of any fired vessel. We will also pay for "loss" by ensuing fire or explosion not included in this paragraph.

8. To hot water boilers or other water heating equipment, caused by a condition or occurrence within the boilers or equipment, other than an explosion.

9. By electricity including electric arching other than lightning, unless fire or explosion ensues, and then only for ensuing "loss", except as provided in Extensions of Coverage - A.1.

10. To the interior of the building or the contents by rain, snow, sand or dust, whether driven by wind or not, unless the exterior of the building first sustains damage to its roof or walls by a covered "loss". We

will pay for "loss" caused by or resulting from the thawing of snow, sleet or ice on the building.

11. To outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers by windstorm or hail.

12. By dishonest or criminal acts committed by you, or any of your members of a limited liability company, or any of your employees, directors, officers, trustees or authorized representatives:

    a. Acting alone or in collusion with other persons; or

    b. While performing services for you or otherwise.

    We will cover acts of destruction by your employees (including leased employees) but only for ensuing "loss"; but there is no coverage for "loss" or damage:

    a. By theft by your employees (including leased employees), or

    b. Caused by or resulting from manipulation, including the introduction or enaction of any virus, harmful code or similar instruction, of a computer system (including "electronic data") by your employees.

## C. Coverage 1

We do not cover under Building(s) (Coverage 1) "loss" caused:

1. To fences, pavements, outdoor swimming pools and related equipment, retaining walls, bulkheads, piers, wharves or docks, when covered under the policy, by freezing or thawing, impact of watercraft, or by the pressure or weight of ice or water whether driven by wind or not.

2. To building materials and supplies not attached as part of the building, unless held for sale by you, caused by or resulting from theft.

## D. Coverage 2

We do not cover under Business Personal Property and Personal Property of Others (Coverage 2) "loss" caused:

1. By or resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title or possession of any property.

2. By breakage of glassware, statuary, marble, bric-a-brac, porcelains and other articles of a fragile or brittle nature. We will cover such "loss" caused by fire; lightning; aircraft; explosion; sonic boom; riot; civil commotion; smoke; vehicles; windstorm; hail; vandalism or malicious mischief; falling objects (the exterior of the building must first sustain damage to roof or walls by falling objects); sinkhole collapse; volcanic action; weight of ice, snow or sleet; sprinkler leakage or water damage.

3. By rain, snow or sleet to property in the open.

4. By any legal proceeding.

5. By actual work upon property being altered, repaired, installed or serviced, or faulty materials or workmanship, unless fire ensues, and then only for "loss" through ensuing fire.

6. By delay, loss of use or loss of market.

7. To property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

8. By theft of furs and fur garments. We will pay for "loss" of furs and fur garments by "burglary" up to $10,000 for any one "loss".

9. By theft of gold and other precious metals and alloys. We will pay for theft of any one article of jewelry up to $100, but our payment will not exceed $10,000 for any one "loss". Jewelry means jewelry, necklaces, bracelets, gems, precious and semi-precious stones, articles containing one or more gems, and articles made of gold or other precious metals.

## E. Coverage 3

We do not cover under Additional Income Protection (Coverage 3):

1. Increase of loss resulting from ordinance or law regulating construction or repair of buildings.

2. Consequential damages resulting from the breach of contractual obligations.

3. Increase of loss caused by or from delay in rebuilding, repairing, or replacing the property or resuming operations, due to interference at the location of the rebuilding, repair, or replacement by strikers or other persons.

4. Loss due to delay or loss of market.

5. Increase of loss caused by or resulting from the suspension, lapse or cancellation of any license, lease or contract. We will pay for loss of "income" and "rental income" during the "interruption of business" and during the period of Full Resumption of Operations if the suspension, lapse or cancellation is caused by the suspension of your business.

6. "Extra expense" caused by the suspension, lapse or cancellation of any license, lease or contract beyond the "interruption of business".

7. Increase of loss resulting from ordinance or law regulating the prevention, control, repair, clean-up or restoration of environmental damage.

8. Income protection specifically insured in whole or in part by this or any other insurance.

## SECTION IV - ADDITIONAL COVERAGE

### Collapse

1. With respect to buildings:

   a. Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;

   b. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

   c. A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;

   d. A building that is standing or any part of a building that is standing is not considered to be

in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

2. We will pay for direct physical "loss" or damage to covered property, caused by collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by one or more of the following:

   a. Fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riot; civil commotion; vandalism or malicious mischief; breakage of building glass; falling objects; weight of snow, ice or sleet; sinkhole collapse or volcanic action.

   Sinkhole collapse means "loss" caused by sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite.   This peril does not include:

   1) The cost of filling sinkholes; or

   2) "Loss" or damage to property caused by or resulting from the sinking or collapse of land into man-made underground cavities.

   b. Water damage resulting from the accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of plumbing, heating, air conditioning, or other equipment or appliances, but does not include damage from a sump pump, sump pump well, or any other system designed to remove subsurface water which is drained from the foundation areas;

   c. Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

   d. Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

   e. Weight of people or personal property;

   f. Weight of rain that collects on a roof;

   g. Use of defective material or methods of construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after the construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in 2.a. through 2.f., we will pay for the loss or damage even if use of defective material or methods in construction, remodeling or renovation, contributes to the collapse.

The criteria set forth in 1.a. through 1.d. do not limit the coverage otherwise provided under this coverage part for the causes of loss listed in 2.a., 2.e. and 2.f..

3. With respect to the following property:

   a. Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

   b. Awnings, gutters and downspouts;

   c. Yard fixtures;

7

d. Outdoor swimming pools;

e. Fences;

f. Piers, wharves and docks;

g. Beach or diving platforms or appurtenances;

h. Retaining walls; and

i. Walks, roadways and other paved surfaces;

if the collapse is caused by a cause of "loss" listed in 2.b. through 2.f., we will pay for "loss" or damage to that property only if:

a. Such "loss" or damage is a direct result of the collapse of a building insured under this coverage part; and

b. The property is covered property under this coverage part.

4. If the business personal property and personal property of others falls down or caves in and such collapse is not the result of collapse of a building, we will pay for "loss" or damage to insured property caused by such collapse of business personal property and personal property of others only if:

a. The collapse was caused by a cause of "loss" listed in 2.a. through 2.f. above;

b. The business personal property and personal property of others which collapses is inside a building; and

c. The property which collapses is not of a kind listed in 3. above, regardless of whether that kind of property is considered to be business personal property or real property.

The coverage stated in this Paragraph 4. does not apply to business personal property and personal property of others if marring and/or scratching is the only damage to that business personal property and personal property of others caused by the collapse.

Collapse of business personal property and personal property of others does not mean cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

## SECTION V - DEDUCTIBLES

Building(s) (Coverage 1), Business Personal Property and Personal Property of Others (Coverage 2) and Extensions of Coverage - We will pay the amount of "loss" to property in any one occurrence which is in excess of the deductible amount shown in the "Declarations," unless otherwise stated in the Extensions of Coverage.

Theft - We will pay the amount of "loss" to property caused by theft in any one occurrence which is in excess of the deductible amount applying to Building(s) (Coverage 1), and Business Personal Property and Personal Property of Others (Coverage 2) shown in the "Declarations," unless a separate deductible for Theft is shown in the "Declarations."

When the occurrence involves "loss" to more than one building (or building and business personal property) and separate limits of insurance apply or blanket limits of insurance apply, the losses will not be combined in

determining the application of the deductible. The deductible will be applied only once per occurrence.

Additional Income Protection (Coverage 3) and Glass and Lettering (Coverage 4) - No deductible applies.

## SECTION VI - SPECIAL LOSS PAYMENTS - COVERAGE 1

The following property is subject to special treatment when damaged by a peril insured against:

Improvements and Betterments Made By Others.

1. If you pay for repair or replacement, we will pay you the expenses involved not exceeding the replacement cost of damaged property.

2. If repaired or replaced at the expense of others, there is no loss payable to you.

3. If the damaged property is not repaired or replaced by you or at the expense of others, there is no loss payable to you.

## SECTION VII - SPECIAL LOSS PAYMENTS - COVERAGE 2

The following property is subject to special treatment when damaged by a peril insured against:

1. Accounting Books, Records, Tapes and Recording Media. We will pay you the cost of blank items (books, film, tape or other recording media). Extensions of Coverage - B.30. - Valuable Papers and Records provides for reproduction of these items.

2. Improvements and Betterments.

a. If you pay for repair or replacement, we will pay you the expenses involved not exceeding the replacement cost of damaged property.

b. If not repaired or replaced, we will pay you a proportion of your original cost. We will determine the proportionate value as follows:

1) Multiply the original cost by the number of days from the "loss" or damage to the expiration of the lease; and

2) Divide the amount determined in 1) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

c. If repaired or replaced at the expense of others, there is no "loss" payable to you.

3. Sold Property. If you have sold property but not delivered it, we will pay you the net selling price.

## SECTION VIII - EXTENSIONS OF COVERAGE

### A. Extensions of Coverage

We will pay the following "losses" at your option. Payments under these Extensions are not an additional amount of insurance and will not increase the total amount of insurance available for the coverage involved.

X 1. **Electrical Service Panels.** We will pay for damage to your electrical service panels caused by electricity.

X 2. **Exterior Signs, Lights, and Clocks.** We will pay up to $5,000 for "loss" caused by a peril insured against to lights, clocks, and unattached exterior signs which you own, or for which the lease holds you responsible. We will cover all lights, clocks, and unattached exterior signs on the premises described in the "Declarations".

We will not pay for "loss" caused by:

a. Wear and tear, gradual deterioration, faulty manufacture or installation, inherent vice, extremes of temperature, dampness of atmosphere or mechanical breakdown.

b. Damage to electrical apparatus which is part of covered property caused by electricity other than lightning, except for ensuing fire damage.

c. Breakage during installation, repairing or dismantling, or breakage during transportation, unless caused by fire, lightning, collision, derailment or overturn of vehicle.

The deductible for this extension is $100.

3. **Fences, Walks, and Unattached Outbuildings - Coverage 1.** We will cover "loss" to fences, walks, and unattached outbuildings caused by fire; lightning; explosion; riot or civil commotion; vehicles; aircraft; smoke; falling objects; windstorm; vandalism or malicious mischief; sonic boom; sinkhole collapse; volcanic action, or collapse caused by any of the perils specified in this paragraph.

Unattached outbuildings include garages, storage areas and tool sheds, but do not include those buildings used for dwelling purposes.

We will pay up to $5,000 for any one "loss".

Our payment will be on an actual cash value basis.

If specific insurance is carried on any item covered by this extension, then this extension does not apply to that item.

4. **Merchandise in Shipment.** Business Personal Property and Personal Property of Others (Coverage 2) includes protection for "loss" by a peril insured against to merchandise which you have sold but for which you have not received payment, while in the custody of a common carrier. This extension of coverage only applies when the "loss" is not recoverable from the purchaser, transporter or any other insurance.

X 5. **Moving Clause - Coverage 2.** When you move, coverage for "loss" will apply for 60 days while in transit and at each location. The amount of insurance applying at each location will be the proportion that the value in each such location bears to the total value of Business Personal Property and Personal Property of Others (Coverage 2) covered at the original location. After the completion of your move, the coverage will apply at the new location only.

X 6. **Refrigerated Products.** Business Personal Property and Personal Property of Others (Coverage 2) covers "loss" to the contents of refrigeration equipment on the insured premises from either power or mechanical failure.

7. **Replacement Cost Coverage.** After a covered "loss" to your building, or business personal property or personal property of others, you have the option of choosing a replacement cost settlement instead of an actual cash value settlement, thereby eliminating any deduction for depreciation. When you select replacement cost, the Coinsurance Clause (Condition 3.) shall apply as a percentage of the replacement cost rather than the actual cash value of the property.

When adjustment is on a replacement cost basis, we will pay the smallest of the following:

a. The amount of insurance applicable to the damaged or destroyed property;

b. The cost of replacement on the same premises with material of like kind and quality and intended for the same use; or

c. The amount actually spent in repairing or replacing the property.

We will not pay on a replacement cost basis for any "loss" or damage:

a. Until the lost or damaged property is actually repaired or replaced; or

b. Unless the repairs or replacement are made as soon as reasonably possible after the "loss" or damage.

We will not pay for "loss" under this Replacement Cost Coverage extension:

a. Due to any ordinance or law regulating the construction or repair of buildings;

b. Unless and until the damaged or destroyed property is repaired or replaced as soon as practicable;

c. To stock (raw, in process or finished) or merchandise including materials and supplies in connection therewith;

d. To household furniture or apartment and dwelling contents;

e. To paintings, etchings, pictures, tapestries, statuary, marbles, bronzes, antique furniture, rare books, antique silver, porcelains, rare glassware, and bric-a-brac, or other articles of art, rarity or antiquity; or

f. To obsolete property.

If the cost of repair or replacement is less than $2,500 for any one "loss" to covered property, we will waive the coinsurance requirement and pay the replacement cost for the "loss" or damaged property.

If you choose an actual cash value settlement, you can still select a replacement cost settlement if the property is repaired or replaced within 6 months of loss. If you choose a replacement cost settlement, the coinsurance requirement applies on a replacement cost basis.

8. **Temperature Change.** Business Personal Property and Personal Property of Others (Coverage 2) covers "loss" resulting from temperature change. There must first be damage from a peril insured against to the insured premises. "Loss" resulting from riot and civil commotion is not covered. X

9

**9. Trees, Shrubs, Lawns and Plants - Coverages 1 & 2.**
We will cover "loss" to trees, shrubs, lawns and plants caused by fire; lightning; explosion; riot or civil commotion; vehicles; aircraft; smoke; falling objects; sonic boom; sinkhole collapse; volcanic action; or collapse caused by any of the perils specified in this paragraph.

If trees, shrubs and plants are inside buildings, we will also cover "loss" caused by windstorm; hail; weight of snow, ice or sleet; vandalism or malicious mischief; or temperature change. There must first be damage from a peril insured against to the insured premises.

We will not be liable for more than $1,000 for any one tree, shrub or plant, including expenses for removing debris, or $5,000 for any one "loss", unless trees, shrubs or plants are held for sale inside buildings, or trees, shrubs or plants are used for decorative purpose inside the building, in which case the Business Personal Property and Personal Property of Others (Coverage 2) limit applies. We will not be liable for more than $2,500 for any one "loss" to lawns.

There is no coverage under this policy for trees, shrubs, lawns and plants grown outside of buildings for sale.

**B. Extensions of Coverage**

Payments under these Extensions of Coverage are an ADDITIONAL AMOUNT of insurance and will increase the total amount of insurance available for the coverage involved.

**1. Accounts Receivable.** This policy covers damage to records of accounts receivable up to $25,000 for any one "loss" caused by a peril insured against at the premises described in the "Declarations", while being conveyed outside the premises or while temporarily within other premises for any purpose except storage. It covers:

  a. All sums due the insured from customers, provided the insured is unable to collect such sums as the direct result of "loss" to records of accounts receivable;

  b. Interest charges on any loan to offset impaired collections, pending repayments of such sums made uncollectible by such "loss";

  c. Collection expense in excess of normal collection cost which is made necessary because of such "loss";

  d. Other expenses, when reasonably incurred by the insured in re-establishing records of accounts receivable following such "loss".

Coverage will also apply while the records of accounts receivable are being moved to and while at a place of safety because of imminent danger of "loss", and while being returned from such place.

The deductible does not apply to this extension.

**2. Arson Reward.** We will pay up to $7,500 as a reward to any individual or group for information which results in the arrest and conviction of any person committing an act of arson resulting in damage to covered property.

**3. Building Ordinance or Law Coverage.** The building ordinance or law:

  a. Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

  b. Is in force at the time of "loss".

But coverage applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered.

Building ordinance or law coverage applies only if:

  a. The building sustains direct physical damage caused by a peril insured against under this policy and such damage results in enforcement of the ordinance or law; or

  b. The building sustains direct physical damage caused by a peril insured against under this policy and direct physical damage that is not caused by a peril insured against under this policy, and the building damage in its entirety results in enforcement of the ordinance or law.

But if the building sustains direct physical damage that is not caused by a peril insured against under this policy and such damage is the subject of the ordinance or law, then there is no coverage even if the building has also sustained direct physical damage caused by a peril insured against.

● **For the Value of the Undamaged Part of the Building**

We will pay for the value of the undamaged part of the building caused by enforcement of any ordinance or law regulating the construction or repair of buildings if the building sustains direct damage caused by a peril insured against that:

  a. Requires the demolition of parts of the undamaged building;

  b. Regulates the construction or repair of the building, or establishes zoning or land use requirements at the premises described in the "Declarations"; and

  c. Is in force at the time of "loss" or damage.

This is not an additional amount of insurance. Payment is included within the amount of insurance for the insured building.

● **Increased Cost of Construction**

We will pay up to $10,000 for the increased cost to repair, replace or construct the building caused by enforcement of any ordinance or law regulating the construction, use or repair of buildings if the building sustains direct physical damage caused by a peril insured against. If the building is repaired or rebuilt, it must be intended for the same use as the current building, unless otherwise required by an ordinance or law.

● **Loss Payment - For the Value of the Undamaged Part of the Building**

We will not pay more for the value of the undamaged portion of the building as a result of any ordinance or law regulating the construction, use or repair of buildings than the smallest of the following:

a. The actual cash value of the undamaged part of the building if the insured building is:

1) Not repaired or rebuilt, or

2) Covered on an actual cash value basis;

b. The amount you actually spend in repairing or rebuilding the undamaged part of the building if the insured building is:

1) Repaired or rebuilt, and

2) Covered on a replacement cost basis; or

c. The difference between the amount of insurance on the insured building at the time of "loss" or damage and the amount paid for "loss" to the damaged or destroyed portion of the insured building.

- **Loss Payment - Increased Cost of Construction**

We will not pay more for the increased cost to repair or rebuild the insured building at the same or another premises in the same general vicinity as a result of any ordinance or law regulating the construction, use or repair of buildings than the increased cost to repair or rebuild the building.

We will not pay for more than a building of the same height, floor area, style and quality on the same premises.

- **Loss Payment - No Coverage**

We will not pay for "loss" due to any ordinance or law that:

a. You were required to comply with before the "loss", even if the building was undamaged; and

b. You failed to comply with.

We will not pay any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

Also, we will not pay any costs associated with the enforcement of an ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants".

X  4. **Check Forgery or Alteration.** We cover forgery on checks issued to you or alteration of checks issued by you up to $2,500 for any one "loss", provided the "loss" is discovered during the policy period or within 60 days after its expiration.

We will not pay for "loss" caused by dishonest or criminal acts committed by you, any of your members of a limited liability company, or any of your employees, directors, trustees or authorized representatives:

a. Acting alone or in collusion with other persons; or

b. While performing services for you or otherwise.

All "losses" committed by any person, whether acting alone or in collusion with others, are considered one occurrence which is subject to the $2,500 limit.

We have the option to defend at our expense the insured or their bank against a suit for the enforcement of payment.

5. **Contingent Business Interruption.**   X

We will pay up to $25,000 for contingent income protection, meaning loss of "income" you sustain due to "interruption of business" resulting directly from "loss" or damage to buildings or business personal property of "dependent properties" from a peril insured against.

We will reduce the amount of your "income" loss, other than "extra expense", to the extent you can resume normal operations by using an available:

a. Source of materials; or

b. Outlet for your products.

"Dependent property" means premises operated by others whom you depend on in any way for continuation of your normal business operation. The dependent properties are:

a. Contributing Locations mean those premises you depend on as a source of materials or services that you need for your operations. Services does not include water, communication or power supply services;

b. Recipient Locations mean those premises you depend on as a customer for your products or services;

c. Manufacturing Locations mean those premises you depend on to manufacture products for your customers under contract or sale;

d. Leader Locations mean those premises you depend on to attract customers to your business.

"Interruption of business" for contingent business interruption means the period of time that your business is suspended and it:

a. Begins with the date of direct "loss" or damage to the "dependent property" caused by a peril insured against; and

b. Ends on the date when the "dependent property" should be repaired, rebuilt or replaced with reasonable speed and similar quality.

The deductible does not apply to this extension.

6. **Counterfeit Money.** We will pay up to $500 per   X workday for "loss" from the acceptance in good faith of counterfeit money. "Workday" means a day on which your operations are usually performed.

This extension also applies if no limit is shown for Business Personal Property and Personal Property of Others (Coverage 2).

The deductible for this extension is $50.

7. **Data, Media, & Records Coverage - Off Premises.**   X We will pay up to $10,000 for any "loss" caused by a peril insured against to your duplicate data and media stored off premises.

The deductible for this extension is $200.

8. **Debris Removal.** We cover the cost of removal of debris resulting from a covered "loss". This does not apply to any increase of "loss" resulting from ordinances or laws regulating construction or repair of

buildings. We will pay up to 5% of the total limits for Coverages 1 and 2 plus $10,000 for debris removal expense.

This extension does not cover the cost to extract "pollutants" from land or water, or to remove, restore or replace polluted land or water.

**X    9.    Demolition Cost.** This policy covers the cost, not to exceed $15,000, of demolishing and removing any undamaged portion of the building after a covered "loss". The demolition must be required by enforcement of any ordinance or law regulating the construction, use or repair of buildings.

The deductible does not apply to this extension.

**X    10.    Electronic Data Processing Equipment -- Mechanical and Electrical Breakdown.** We will cover "electronic data processing equipment", "electronic data" and "media" for "loss" or damage caused by mechanical breakdown, malfunction, short circuit, blow-out, electrical injury, magnetic injury or disturbance to "electronic data processing equipment", "electronic data" and "media". We will pay up to $10,000 for any one "loss".

Coverage includes any accidental erasure of "electronic data" caused by electrical or magnetic injury, or operator or programmer error caused by the electrical damage.

The cause of the electrical damage must occur in building on the premises described in the "Declarations" or within 1,500 feet of it. We will not cover "loss" caused by any change in electrical power supply, such as interruption, power surge, or brown-out that originates more than 1,500 feet away from the building containing your data processing operations unless caused by lightning.

We will cover "loss" or damage to your "electronic data processing equipment", "electronic data" and "media" caused by computer virus.

We do not cover:

a.    "Electronic data processing equipment" which the insured rents or leases to others while it is away from the premises described in the "Declarations".

b.    "Media" and "electronic data" which cannot be replaced with other of the same kind or quality.

c.    Program support documentation such as flow charts, record formats or narrative descriptions unless they are converted to "electronic data" form and then only in that form.

d.    "Loss" caused by error or omission or deficiency in design, specifications, materials or workmanship, unless fire or explosion ensues, and then only for "loss", damage or expense caused by the ensuing fire or explosion.

e.    "Loss" caused by processing operations or loss that occurred while the insured property is being worked on unless fire or explosion ensues, and then only for "loss", damage or expense caused by the ensuing fire or explosion.

f.    "Loss" caused by programming errors or incorrectly instructing the machine.

"Electronic data processing equipment" means computers, terminals, teleprinters, readers, telephone

systems, computerized cash registers, word processing equipment, and equipment and parts related to the processing unit.

"Electronic data processing equipment" does not include computer operated or controlled production or processing machinery or equipment or a separate computer or computerized control panels used to operate the production or processing machinery or equipment.

"Media" means materials on which "electronic data" are recorded, such as magnetic tapes, disc packs, paper tapes and cards.

The deductible for this extension is $200.

**11.    Employee Dishonesty.** We will pay for "loss" of "money", "securities", and business personal property and personal property of others (as described in Coverage 2) up to $10,000 per occurrence resulting from dishonest acts committed by any of your "employees", whether identified or not, acting alone or in collusion with other persons (except you or your partner(s)) with the intent to:    **X**

a.    Cause you to sustain loss; and also

b.    Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

1)    Any "employee", or

2)    Any other person or organization.

This extension is subject to the following:

a.    For any loss, our payment shall not exceed the replacement cost of business personal property and personal property of others at the time of loss, except the cost of "securities" may be determined by the market value at the time of settlement;

b.    All loss caused by, or involving, one or more "employees", whether the result of a single act or a series of acts, is considered one occurrence;

c.    We will only pay for loss you sustain through acts committed or events occurring during the policy period and if loss is discovered during the policy period or is discovered within one year from the end of the policy period;

d.    Our payment is not increased regardless of the number of people we protect;

e.    Regardless of the number of years our policy is in force, the amount of insurance shall not be cumulative from year to year;

f.    If you sustained a loss during the period of any prior insurance that you could have recovered under your prior insurance, except that the time to discover the loss had expired, we will pay the loss under this Extension of Coverage, provided:

1)    This policy became effective at the time of cancellation or termination of your prior insurance; and

2)    The loss would have been covered by this insurance had it been in effect when the act or events causing the loss were committed or occurred.

12

We will pay up to $10,000 or the amount of insurance under your prior insurance, whichever is less.

The loss under this part f. is not an additional amount of insurance and will not increase the total amount of insurance for Employee Dishonesty.

We do not cover:

a. Loss caused by any dishonest or criminal act committed by you, or any of your members of a limited liability company, or any of your partners, whether acting alone or in collusion with other persons.

b. Loss or that part of any loss, the proof of which as to its existence or amount is dependent upon:

   1) An inventory computation, or

   2) A profit and loss computation.

c. Loss that is an indirect result of any act or occurrence covered by this policy including, but not limited to, loss caused by:

   1) Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, covered property.

   2) Payment of damages of any type for which you are legally liable. We will pay compensatory damages arising directly from a loss covered by this policy.

   3) Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this policy.

   4) Payment of expenses related to any legal action.

   5) Any "employee" immediately upon discovery by:

      a) You, or

      b) Any of your partners, officers, directors, or members of a limited liability company not in collusion with the employee,

   of any dishonest act committed by that "employee" before or after being hired by you.

d. Loss caused by any employee for whom similar prior insurance has been cancelled and not reinstated since the last such cancellation.

e. Loss resulting directly or indirectly from trading whether in your name or in a genuine or fictitious account.

f. Loss resulting from fraudulent or dishonest signing, issuing, cancelling, or failing to cancel, a warehouse receipt or any papers connected with it.

"Employee" means for this coverage only:

a. Any natural person:

   1) While in your service (and for 30 days after termination of service);

2) Whom you compensate directly by salary, wages or commissions; and

   3) Whom you have the right to direct and control while performing services for you.

b. Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding, however, any such person while having care and custody of property outside the premises.

c. Any natural person who is leased to you under a written agreement between you and a labor leasing firm to perform duties related to the conduct of your business.

d. Any natural person who is a former employee, director, partner, member of a limited liability company, representative, or trustee retained as a consultant while performing services for you.

e. Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care, custody or control of covered property outside the premises.

"Employee" does not mean any:

a. Agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

b. Manager of a limited liability company, director or trustee except while performing acts coming within the scope of the usual duties of an "employee".

The deductible for this extension is $200.

12. **Expenses for Loss Adjustment.** We will pay up to $1,000 for expenses involved in the preparation of loss data, inventories and appraisals. This does not include expenses incurred in using a public adjuster. | X

The deductible does not apply to this extension.

13. **Expenses for Security.** We will pay up to $2,500 for expenses incurred for security after a covered "loss" to protect the covered property from further damage. | X

The deductible does not apply to this extension.

14. **Fine Arts.** We will pay up to $10,000 for a "loss" caused by a peril insured against to your fine arts on the premises described in the "Declarations". Fine arts means property that is rare or has historical value, such as paintings, etchings, drawings, rare books, tapestries, or stained glass. | X

We will not cover fine arts that are on display at fairgrounds or at a national or international exposition.

We do not cover "loss" caused by a process to repair, retouch, restore, adjust, service or maintain your fine arts. If a fire or explosion results, we do cover the "loss" caused by the fire or explosion.

15. **Fire Department Service Charges.** We will pay reasonable charges made by a fire department for services rendered as a result of an insured "loss". | X

The deductible does not apply to this extension.

13

X  16. **Fire Extinguisher Recharge.** We will pay expenses incurred to recharge portable fire extinguishers after they are used to fight a fire.

The deductible does not apply to this extension.

X  17. **Income Protection Coverage.**

- **Income Protection Coverage**

This extension provides for loss of "income" and "rental income" you sustain due to partial or total "interruption of business" resulting directly from "loss" to the buildings, or business personal property or personal property of others described in the "Declarations" from a peril insured against. "Loss" or damage to business personal property and personal property of others includes covered property in the open, or in a vehicle on the premises described in the "Declarations", or within 1,500 feet thereof.

If you are a tenant, your premises is the portion of the building described in the "Declarations" which you rent, lease, or occupy including:

a. All routes within the building to gain access to the described premises; and

b. Your business personal property in the open, or in a vehicle on the premises described in the "Declarations", or within 1,500 feet thereof.

You are required to resume normal business operations as promptly as possible and shall use all available means to eliminate any unnecessary delay.

- **Extra Expenses**

"Extra expense" means necessary expenses you incur due to partial or total "interruption of business" resulting directly from "loss" to the buildings, or business personal property or personal property of others, described in the "Declarations" from a peril insured against. "Loss" or damage to business personal property and personal property of others also includes covered property in the open, or in a vehicle on the premises described in the "Declarations", or within 1,500 feet thereof.

We will pay actual and necessary "extra expenses" (other than the expenses to repair or replace property) sustained by you to:

a. Avoid or minimize the "interruption of business" and to continue your business operations:

1) At the premises described in the "Declarations"; or

2) At replacement premises or at temporary locations, including:

a) Relocation expenses, and

b) Costs to equip and operate the replacement or temporary locations.

b. Minimize the "interruption of business" if you cannot continue your business operations to the extent it reduces the amount of loss that would have been payable under loss of "income".

We will not pay any "loss" or damage to your buildings, or business personal property and personal property of others. We also will not pay the cost of research or any other expense to replace or restore your valuable papers and records. We will pay the extra cost to repair or replace your covered property and the amount to research, replace or restore the lost information on damaged valuable papers and records to the extent it reduces the amount of loss that would have been payable under loss of "income" and "rental income".

- **Additional Coverages**

a. **Civil Authority**

We will pay loss of "income" and "rental income" you sustain and necessary "extra expenses" caused by action of civil authority that prohibits access to the described premises resulting directly from "loss" to property, other than at the described premises, caused by a peril insured against.

This coverage for loss of "income" and "rental income" will begin 72 hours after the time of the action of civil authority and will apply for a period of up to three consecutive weeks after coverage begins.

The coverage for "extra expenses" will begin immediately after the time of the action of civil authority and will apply for a period of up to 24 consecutive days after the time of the action of civil authority.

b. **Full Resumption of Operations**

We will also pay your actual loss of "income" and "rental income" for an additional 30 days if your "income" and "rental income" after operations are resumed is less than your "income" and "rental income" before the loss. The additional amount we will pay will start after the later of the following times:

1) The date on which the liability for Income Protection Coverage would terminate if this clause had not been included; or

2) The date on which repair, replacement or rebuilding of such part of the damaged or destroyed property described in the "Declarations" is actually completed.

- **Amount of Insurance**

If the "loss" to the buildings, or business personal property and personal property of others, results in partial or total suspension of your business, we will pay your actual loss sustained up to $250 for each workday not to exceed $25,000 for any one "loss".

Payment of loss of "income" and "rental income" is not limited by the end of the policy period.

Payments under the following coverages are also subject to the amounts of insurance of $250 for each workday up to $25,000 for any one loss and the following coverages will not increase

these amounts of insurance under this Extension of Coverage - Income Protection:

a. Extra Expenses Coverage;

b. Civil Authority; or

c. Full Resumption of Operations.

- **Exclusions**

  We will not cover any loss under this Extension of Coverage caused by the exclusions shown under Paragraph E. - Section III - Exclusions.

- **Deductible**

  The deductible does not apply to this extension.

X  18. **Income Protection - Off Premises Utility Service Failure.** We will pay up to $25,000 for loss of "income" and "rental income" you sustain due to "interruption of business" resulting from the interruption of service to the premises described in the "Declarations".

The "interruption of business" must result directly from "loss" to the following property, not on the premises described in the "Declarations" from a peril insured against:

a. Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services, to the premises described in the "Declarations", such as:

1) Communication transmission lines (including fiber optic transmission lines);

2) Coaxial cables; and

3) Microwave radio relay except satellites.

b. Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the premises described in the "Declarations":

1) Utility generating plants;

2) Switching stations;

3) Substations;

4) Transformers; and

5) Transmission lines.

c. Water Supply Services, meaning the following types of property supplying water to the described premises:

1) Pumping stations; and

2) Water mains.

We will only pay for loss of "income" sustained by you after the first 24 hours following "loss" to off-premises communication supply services property, power supply services property, or water supply services property.

The deductible does not apply to this extension.

X  19. **Key Replacement.** If keys to your building(s) are stolen during a theft loss, we will pay, at your request, up to $2,500 to replace the keys and locks to the doors of your premises.

X  20. **Money and Securities.** We will pay up to $1,000 for any one "loss" caused by a peril insured against to "money" or "securities" while in or on the premises described in the "Declarations" or within a bank or savings institution.

We will pay for "money" and "securities" while being conveyed by the insured or by an authorized employee, up to $1,000 for any one "loss" caused by a peril insured against. This includes "loss" that occurs inside the home of the insured or an authorized employee.

The deductible for this extension is $200.

21. **Money and Securities Destruction.** We will pay for "money" and "securities" destruction up to $10,000 for any one "loss" caused by a peril insured against. "Money" and "securities" destruction means "loss" by destruction of "money" and "securities" within the premises:

a. While the premises are open for business; or

b. While contained within a locked "vault" or "safe".

This does not include "loss" caused by unexplained or mysterious disappearance or abstraction.

22. **Newly Acquired or Constructed Property.**

a. If this policy covers Building(s), you may extend that insurance to apply to 50% of the limit for Coverage 1 or $500,000, whichever is less, on:

1) Newly acquired buildings at other than the location(s) described in the "Declarations";

2) New additions, new buildings and new structures when constructed on the insured premises, including materials, equipment and supplies on or within 1,500 feet of the insured premises;

provided there is no other insurance applicable.

b. If this policy covers your Business Personal Property and Personal Property of Others, you may extend that insurance to apply to 25% of the limit for Coverage 2 or $250,000, whichever is less, on newly acquired business personal property in a newly acquired or leased building other than the location(s) described in the "Declarations".

provided there is no other insurance applicable.

c. In addition to the amount of insurance provided in Extensions of Coverage B.17. - Income Protection - Valued Coverage, if this policy covers Income Protection, you may extend that insurance to apply up to 25% of the limit for Coverage 3 or $250,000, whichever is less, for loss of income on:

1) Newly acquired buildings or business personal property in a newly leased building at other than the location(s) described in the "Declarations"; or

2) New additions, new buildings and new structures when constructed on the described premises, including materials, equipment and supplies on or within 1,500 feet of the described premises, if "loss" to the new additions, new buildings, and new structures delays the start of your business. The "interruption of business" will start on the day

15

your business would have started if the "loss" had not occurred;

provided there is no other insurance applicable.

This extension shall apply for 90 days after the acquisition or start of construction, provided the policy remains in force or is renewed.

You shall report values involved and pay any additional premium.

This extension does not apply to property while in transit.

23. **Non-Owned Detached Trailers.** Business Personal Property and Personal Property of Others (Coverage 2) is extended to cover non-owned detached trailers that you do not own, provided that:

   a. The trailer is used in your business;

   b. The trailer is in your care, custody or control at the insured's premises described in the "Declarations"; and

   c. You have a contractual responsibility to pay for "loss" or damage to the trailer.

We will not pay for any "loss" or damage that occurs:

   a. While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

   b. During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

We will pay up to $5,000 for any one "loss" caused by a peril insured against to non-owned trailers.

This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

24. **Personal Articles.** Business Personal Property and Personal Property of Others (Coverage 2) is extended to cover household and personal articles of the insured, the insured's partners, members or managers of a limited liability company, the insured's officers, or the insured's employees for loss caused by a peril insured against. We will pay up to $5,000 for any one "loss" at the insured's premises.

25. **Pollutants Clean Up and Removal.** We will cover the cost to extract "pollutants" from land or water on the insured premises if the release, discharge or dispersal of "pollutants" is caused by a peril insured against during the policy period. We will pay up to $10,000 for all "losses" throughout the year. The "loss" must be reported to us within 180 days after the "loss" or the end of the policy period, whichever is the later date.

X  26. **Private Structures and Rental Value - Dwellings.** You may apply an amount of insurance equal to 10% of the coverage on any insured dwelling to each of the following:

   a. Private structures pertaining to the dwelling, and

   b. Rental value of the dwelling or its private structures. The amount available in any one month cannot exceed 25% of this additional amount of

insurance. Damaged property must be repaired as soon as practicable.

Dwelling means a residence for not more than four families. It may contain not more than five roomers or boarders in addition to the four families and it may also contain an incidental commercial occupancy. It may not be used only for commercial or farming purposes.

Incidental commercial occupancy means:

   a. Offices used for business or professional purposes,

   b. Private schools or studios used for music, dance, photography and other instructional purposes, and

   c. Small service occupancies used for service rather than for sales. Examples are barber or beauty shops, tailor or dressmaker, telephone exchanges and shoe repair shops using hand work only.

27. **Property in Danger.** This policy covers up to 30 days for any "loss" to covered property removed from the insured premises or at a temporary location because of danger of damage by a peril insured against or to repair damage to the covered property.

28. **Temporarily Off-Premises - Business Personal Property and Personal Property of Others - Coverage 2.**  X
This extension includes coverage for business personal property and personal property of others up to $25,000, and coverage for salesmen's samples up to $2,500 for "loss" caused by a peril insured against except while in transit. This extension applies only to business personal property and personal property of others at a location you do not own, lease or operate and for not more than 60 days.

We will cover business personal property and personal property of others, and salesmen's samples at exhibitions or trade shows for not more than 60 days.

This extension shall not apply to property rented to others, and property sold on installment or deferred payment plans after delivery to customers.

29. **Transportation.** We will pay up to $25,000 for "loss"  X
to business personal property and personal property of others (as described in Coverage 2) in or on a vehicle owned, leased or operated by or for you caused by: fire; lightning; flood; earthquake; landslide; windstorm; collapse of bridge, dock or culvert; theft; "robbery"; collision (excluding roadbed collision), upset or overturn of transporting vehicle.

This extension includes $1,000 of coverage for tools and equipment.

This extension applies away from premises only.

30. **Valuable Papers and Records.** Business Personal  X
Property and Personal Property of Others (Coverage 2) is extended to cover the "extra expense" incurred in the reproduction of your valuable papers and records, and "electronic data" when destroyed by a peril insured against at the premises described in the "Declarations", while being conveyed outside the premises or temporarily within other premises for any purpose except storage.

We will also cover the "extra expense" incurred in the reproduction of your "electronic data" when

destroyed by a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for "loss" or damage caused by or resulting from manipulation, including the introduction or enaction of any virus, harmful code or similar instruction of a computer system, (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

Coverage will also apply while your valuable papers and records are being moved to and while at a place of safety because of imminent danger of "loss", and while being returned from such place.

To the extent that "electronic data" is not replaced or restored, the "loss" will be valued at the cost of replacement of the media on which "electronic data" was stored, with blank media of substantially identical type.

This extension is limited to $25,000 for any one "loss".

The deductible does not apply to this extension.

## SECTION IX - WHEN AND WHERE THIS POLICY APPLIES

### A. WHEN

This policy applies to losses that occur during the policy period. The policy period is shown in the "Declarations", "Renewal Certificate", "Amended Declarations", "Revised Declarations" or endorsement. An "Amended Declarations" or endorsement tells you that the policy has been changed. A "Renewal Certificate" tells you that the policy is being renewed for another policy period.

### B. WHERE

Property Protection - This policy applies to "loss" of property designated in the specific coverage.

## SECTION X - COMMERCIAL PROPERTY CONDITIONS

### 1. ABANDONMENT OF PROPERTY

We will not accept abandoned property.

### 2. APPRAISAL

If you and we fail to agree on the amount of "loss", either party may make written demand for an appraisal. Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days after both appraisers have been identified, you or we can ask a judge of a court of record in the state where your principal office is located to select an umpire.

The appraisers shall then set the amount of "loss". If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the

amount of "loss". If they cannot agree, they will submit their differences to the umpire. A written award by two will determine the amount of "loss".

Each party will pay the appraiser it chooses, and equally bear expenses of the appraisal. However, if the written demand for appraisal is made by us, we will pay for the reasonable cost of your appraiser and your share of the cost of the umpire.

We will not be held to have waived any rights by any act relating to appraisal.

### 3. COINSURANCE CLAUSE - COVERAGES 1 & 2

(See percentage shown in the "Declarations")

The coinsurance clause applies to each insured item for which a specific amount is shown in the "Declarations".

We will pay that proportion of any "loss" that the amount of insurance bears to the amount produced by multiplying the coinsurance percentage by the actual cash value (ACV) of such property at the time of "loss". We will pay the amount of insurance or the amount determined by coinsurance, whichever is less.

Our Payment = $\frac{\text{amount of insurance}}{\text{amount required}}$ X loss

"Amount required" means the coinsurance percentage multiplied by the actual cash value.

If "loss" or damage to your covered property is on a replacement cost basis, "amount required" means the coinsurance percentage multiplied by the replacement cost.

When applying the coinsurance clause, the cost of excavations and earthmoving, the value of parts of structures underground and the Extensions of Coverage are not to be considered.

### 4. DIVISIBLE CONTRACT

The breach of a policy condition in one building or location will have no effect on the coverage on another where no breach exists.

### 5. LIMITATION — ELECTRONIC MEDIA AND RECORDS

We will not pay for any loss of "income" and "rental income" caused by direct physical damage to electronic media and records after the longer of:

a. Sixty consecutive days after the date of physical "loss" or damage; or

b. The period beginning with the date of direct physical "loss" or damage to repair, rebuild or replace, with reasonable speed and similar quality, other property at the insured premises due to "loss" caused by the same occurrence

Electronic media and records mean:

a. Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

b. Data stored on such media; or

c. Programming records used for electronic data processing or electronically controlled equipment.

This limitation does not apply to "extra expense".

## 6. LOSS PAYMENT

We will adjust all "losses" with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. We will not pay you more than your financial interest in the covered property.

"Loss" will be payable 30 days after we receive your proof of "loss" if you have complied with all the terms of this coverage part and one of the following has been done:

a. We have reached an agreement with you; or

b. There is an entry of final judgment; or

c. There is a filing of an appraisal award on your behalf.

We have the option to:

a. Pay the value of that part of the damaged property;

b. Pay the cost to repair or replace that part of the damaged property, but this does not include the increased cost of construction due to any ordinance or law regulating the construction or repair of the damaged building;

c. Take all or part of the damaged property at an agreed or appraised value; or

d. Repair or replace that part of the damaged property with material of like kind and quality, but this does not include the increased cost of construction due to any ordinance or law regulating the construction or repair of the damaged building;

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this coverage form or any applicable provision which amends or supersedes the Valuation Condition.

We will not pay more than the amount of insurance shown in the Declarations applicable to the damaged or destroyed property.

## 7. MORTGAGEE

"Loss" shall be payable to mortgagees named in the "Declarations", to the extent of their interest and in the order of precedence.

### Our Duties

We will:

a. Protect the mortgagee's interest in an insured building. This protection will not be invalidated by any act or neglect of the insured, any breach of warranty, increase in hazard, change of ownership, or foreclosure if the mortgagee has no knowledge of these conditions.

b. Give the mortgagee 30 days notice before cancellation or refusal to renew this policy.

### Mortgagee's Duties

The mortgagee will:

a. Furnish proof of "loss" within 60 days if you fail to do so.

b. Pay upon demand any premium due if you fail to do so.

c. Notify us of any change in ownership or occupancy, or any increase in hazard of which the mortgagee has knowledge.

d. Give us his or her right of recovery against any party liable for "loss". This shall not impair the right of the mortgagee to recover the full amount of the mortgage debt.

e. After a "loss", permit us to satisfy the mortgage requirements, and receive full transfer of the mortgage and all "securities" held as collateral to the mortgage debt.

Policy conditions relating to APPRAISAL, LOSS PAYMENT and SUITS AGAINST US apply to the mortgagee.

This mortgagee interest provision shall apply to any trustee or loss payee named in the "Declarations".

## 8. NO BENEFIT TO BAILEE

No bailee shall benefit, directly or indirectly, from this insurance.

## 9. OTHER INSURANCE

Other insurance is not permitted. This policy is excess to any other insurance.

If both this insurance and other insurance apply to a "loss", we will pay our share. Our share will be the proportionate amount that this insurance bears to the total amount of all applicable insurance.

## 10. PROPERTY OF OTHERS

If we are called upon to pay a "loss" for property of others, we reserve the right to adjust the "loss" with the owner. If we pay the owner, such payments will satisfy your claims against us for the owner's property.

In case of disagreement with the property owner, we will conduct the defense on your behalf at our expense.

## 11. PROTECTIVE SAFEGUARDS

You must maintain, so far as is within your control, any protective safeguards shown in the "Declarations". Failure to do so will suspend the coverage of this policy at the affected location. Coverage will not be suspended if you notify us immediately when the system is not in operation because of repairs or maintenance, and you comply with our requests and directions at that time.

## 12. RECORDS

You must keep proper records so that we can accurately determine the amount of "loss".

property. The balance of the proceeds will be divided according to your and our interests.

At your option, the recover property will be returned to you. You must ... in return to us the amount we paid to you for the property. We will pay the expenses of the recovery and the expenses to repair the recovered property, up to the limit of insurance.

## 14. RESUMPTION OF YOUR BUSINESS

We will reduce the amount of your:

  a. Income protection loss, other than extra expense, to the extent that you can resume your business, in whole or in part, by using damaged or undamaged property (including business personal property) at the insured premises or elsewhere.

  b. "Extra expense" loss to the extent you can return your business to normal and discontinue such "extra expense".

## 15. SUITS AGAINST US

We may not be sued unless there is full compliance with all the terms of this policy. Suit must be brought within 2 years of the loss.

## 16. VACANCY AND UNOCCUPANCY

Property may be unoccupied without limit of time. If the building at which the "loss" occurs is vacant for more than 60 consecutive days before the "loss", then we will:

  a. Not pay for any "loss" caused by:

    1) Vandalism or malicious mischief, water damage, glass breakage or theft,

    2) Sprinkler leakage unless you have exercised reasonable care to protect the system against freezing;

  b. Pay for other covered "losses", but we will reduce the amount of payment by 15%.

For a tenant operated business, the building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

For the owner of the building, the building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

  a. Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

  b. Used by the building owner to conduct customary operations.

Buildings under construction are not considered vacant.

## 17. VALUATION

We will determine the value of covered property in the event of "loss" as follows:

## 18. YOUR DUTIES AFTER A LOSS

In case of a covered "loss", you must perform the following duties:

  a. Give us or our Agent immediate notice of loss. If a crime "loss", also notify the police;

  b. Protect the property from further damage. If necessary for property protection, make reasonable repairs and keep a record of all repair costs;

  c. Furnish a complete inventory of damaged property stating its original cost. At our request, furnish a complete inventory of undamaged property stating its original cost. If a "loss" is both less than $10,000 and less than 5% of the amount of insurance, no special inventory and appraisal of the undamaged property shall be required;

  d. Produce for examination, with permission to copy, all books of accounts, bills, invoices, receipts and other vouchers as we may reasonably require;

  e. Show us or our representative the damaged property, as often as may be reasonably required;

  f. Cooperate with us in our investigation of a loss and any "suits";

  g. Separately submit to examinations under oath and sign a transcript of the same;

  h. Send us, within 90 days after the "loss", your signed and sworn proof of loss statement which includes:

    1) Time and cause of "loss";

    2) Your interest in the property and the interest of all others involved;

    3) Any encumbrances on the property;

    4) Other policies which may cover the "loss";

    5) Any changes in title, use, occupancy or possession of the property which occurred during the policy term;

    6) When required by us any plans, specifications and estimates for the repair of the damaged building;

    7) The inventory of damaged property as prepared in c. above;

  i. In addition to the other conditions under Additional Income Protection (Coverage 3), make necessary replacements or repairs, use all available means to eliminate any unnecessary delay in order to resume operations as soon as possible;

  j. Agree to help us enforce any right of recovery against any party liable for "loss" under this policy. This will not apply if you have waived recovery rights in writing prior to a "loss".

19

.

**13. RECOVERIES**

If either you or we recover any property after settlement, that party must notify the other. Expenses of

a. At actual cash value at the time of the "loss", except as provided elsewhere in this policy:

b. Stock you have sold but not delivered will be

## SECTION XI - DEFINITIONS

- "Aircraft" means any machine or device capable of atmospheric flight except model airplanes.

- "Automobile" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any attached machinery or equipment), but does not include "mobile equipment".

- "Burglary" means the taking of business personal property and personal property of others (as described in Coverage 2) from inside the premises by a person unlawfully entering or exiting the premises as evidenced by visible marks of forcible entry or exit. It includes "loss" to the building and its equipment resulting from "burglary" or attempted "burglary".

- "Declarations", "Amended Declarations", "Revised Declarations" and "Renewal Certificate" means the form which shows your coverages, limits of protection, premium charges and other information. This form is part of your policy.

- "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-Roms, DVD's, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of "electronic data", means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph does not apply to your stock of prepackaged software;

- "Extra expense" means the necessary expenses incurred by you during the "interruption of business" that would not have been incurred if there had been no direct "loss" to covered property caused by a peril insured against. mold or mildew and any mycotoxins, spores, scents or

- "Income" means the sum of net profit and necessary continuing operating expenses incurred by the business such as payroll expenses, taxes, interests and rents. For manufacturing risks, "income" includes the net sales value of production.

- "Interruption of business" means the period of time that your business is partially or totally suspended and if:

  1. Begins with the date of direct "loss" to covered property caused by a peril insured against; and

  2. Ends on the date when the covered property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

- "Loss" means direct and accidental loss of or damage to covered property.

- "Mobile equipment" means any of the following types of land vehicles (including any attached machinery or equipment):

  1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

  2. Vehicles maintained for use solely on or next to premises you own or rent;

  3. Vehicles that travel on crawler treads;

  4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

     a. Power cranes, shovels, loaders, diggers or drills; or

     b. Road construction or resurfacing equipment such as graders, scrapers, or rollers;

  5. Vehicles not described in 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

     a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

     b. Cherry pickers and similar devices used to raise or lower workers;

  6. Vehicles not described in 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but are considered "automobiles".

     a. Equipment designed primarily for:

        1) Snow removal;

        2) Road maintenance, but not construction or resurfacing;

        3) Street cleaning;

     b. Cherry pickers and similar devices mounted on an "automobile" or truck chassis and used to raise or lower workers; and

     c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

- "Money" means:

  1. Currency, coins and bank notes in current use and having a face value; and

  2. Travelers checks, register checks, credit card slips and money orders held for sale.

- "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

- "Rental income" means:

  1. The rents from the tenant occupancy of the premises described in the "Declarations;"

  2. Continuing operating expenses incurred by the business such as:

     a. Payroll; and

     b. All expenses for which the tenant is legally responsible and for which you would otherwise be responsible.

3. Rental value of the property described in the "Declarations" and occupied by you;

4. Incidental income received from coin-operated laundries, hall rentals or other facilities on the premises described in the "Declarations".

- "Robbery" means the taking of business personal property and personal property of others (as described in Coverage 2) from the care and custody of a person by one who has:

    1. Caused or threatened to cause that person bodily harm; or

    2. Committed an obviously unlawful act witnessed by that person.

- "Safe" means a steel receptacle which has a door(s) that is no less than 1/2" thick, walls or body that are no less than 1/4" thick and is equipped with at least one key or combination lock.

- "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

    1. Tokens, tickets, food stamps, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    2. Evidences of debt issued in connection with credit or charge cards not issued by you;

    but does not include "money" or lottery tickets.

- "Vault" means a steel or concrete compartment which has a steel door(s) that is no less than 1 1/2" thick; walls that are no less than 1/4" thick, if steel, or 9" thick, if reinforced concrete; and the door is equipped with at least one combination lock. The word "walls" includes the roof and floor of the "vault".



ERIE INSURANCE GROUP

FIVESTAR CONTRACTORS'
ULTRAFLEX PACKAGE
ULTRAPACK BUSINESS
ULTRASURE FOR PROPERTY OWNERS
GU-98 (Ed. 9/02) UF-3891

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# NEW YORK AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

FIVESTAR COMMERCIAL PROPERTY COVERAGE PART

ULTRAFLEX COMMERCIAL PROPERTY COVERAGE PART

ULTRAPACK COMMERCIAL PROPERTY COVERAGE PART

ULTRASURE FOR PROPERTY OWNERS PROPERTY COVERAGE PART

The following is added to **Section X - Commercial Property Conditions:**

**WRITTEN ESTIMATE OF DAMAGES TO REAL PROPERTY**

In the event of a pending claim for "loss" or damage to real property, upon request, we shall furnish to you, or your representative as designated in writing, a copy of any written estimate or estimates of the cost of the "loss" or damage to real property resulting from the perils insured against, which we have independently prepared for our own purposes, or which we have had prepared on our behalf, for our own purposes, specifying all appropriate deductions, within 30 days after the request or preparation, whichever is later, of such estimate or estimates. We shall not be required to provide an estimate on claims for damages to real property unless we have independently prepared such estimate or have had one prepared on our behalf for our own purposes.



**ERIE INSURANCE GROUP**

INTERLINE
IL 09 52 (Ed. 11/02) UF-4076

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME POLICY

COMMERCIAL PROPERTY COVERAGE PART

COMMERCIAL INLAND MARINE COVERAGE PART(S)

FIVESTAR CONTRACTORS' COMMERCIAL PROPERTY COVERAGE PART

ULTRAFLEX COMMERCIAL PROPERTY COVERAGE PART

ULTRAPACK COMMERCIAL PROPERTY COVERAGE PART

ULTRASURE FOR PROPERTY OWNERS' COMMERCIAL PROPERTY COVERAGE PART

ULTRASURE FOR LANDLORDS POLICY

**A. Cap On Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in that Act for a "certified act of terrorism" include the following:

**1.** The act resulted in aggregate losses in excess of $5 million; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

With respect to any one or more "certified acts of terrorism" under the federal Terrorism Risk Insurance Act of 2002, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payment for terrorism losses.

**B. Application Of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Reaction or Radiation Exclusion or the War Exclusion.

Copyright ISO Properties, Inc., 2002

1

GENERAL USE
(Ed. 2/03) UP-4070



## ERIE INSURANCE GROUP

# POLICYHOLDER DISCLOSURE NOTICE

# TERRORISM INSURANCE COVERAGE

Your policy covers certain losses caused by terrorism. In accordance with the Federal Terrorism Risk Insurance Act of 2002, enacted November 26, 2002 ("the Act"), we are providing you with notice disclosing the portion of your premium, if any, attributable to coverage for acts of terrorism certified by the Secretary of Treasury under the Act. We are also providing you with notice regarding federal participation in payment of terrorism losses.

## NOTICE - DISCLOSURE OF PREMIUM

You have coverage for acts of terrorism certified under the Act in your policy.

**NO PORTION** of your premium is attributable to coverage for certified acts of terrorism.

**Please Note:** Additional premium charges for this coverage may apply to future renewals.

## NOTICE - DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The Act establishes a federal program, under which the United States Government shares the risk of loss from certified acts of terrorism with the insurance industry. The United States Government pays 90% of losses from certified acts of terrorism exceeding the statutorily established deductible paid by the insurance company providing the coverage.

**This Notice is part of your policy.**

1



**ERIE INSURANCE GROUP**

FIVESTAR CONTRACTORS
ULTRAFLEX PACKAGE
ULTRAPACK BUSINESS
ULTRASURE FOR LANDLORDS
ULTRASURE FOR PROPERTY OWNERS
(Ed. 12/99) UF-9557

# IMPORTANT NOTICE TO NEW YORK POLICYHOLDERS

Dear Policyholder:

In accordance with the guidelines established in New York Regulation 57, if the building/dwelling insured under your policy is equipped with hurricane resistant laminated glass windows or doors, or hurricane storm shutters, you may be eligible for a credit. The hurricane storm shutters or laminated materials must be designed and properly installed in accordance with the manufacturer's specifications to withstand external pressure or wind borne debris from a storm with sustained wind speed of at least 110 miles per hour, or a storm surge of 8 feet above normal.

Please contact your ERIE Agent for details and conditions regarding this credit.



ERIE INSURANCE GROUP

# IMPORTANT NOTICE TO POLICYHOLDERS - TERRORISM COVERAGE - PROPERTY

Your policy covers certain losses caused by terrorist acts, subject to the terms, limits, exclusions, and conditions of coverage in the policy.

The Terrorism Risk Insurance Act of 2002 ("the Act") establishes a program within the Department of Treasury under which the federal government shares, with the insurance industry, the risk of loss from future acts of terrorism, as defined in the Act. The term "certified act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States:

    to be an act of terrorism;

    to be a violent act or an act that is dangerous to human life, property, or infrastructure; and

    to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or effect the conduct of the United States Government by coercion.

The Act provides that, to be certified, an act of terrorism must cause losses of at least $5 million.

## ENDORSEMENT - CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM IL 09 52

The Act contains certain provisions that may result in a limitation or cap on the liability of insurers for payment of insured losses resulting from "certified acts of terrorism." Accordingly, Endorsement IL 09 52, entitled "Cap On Losses From Certified Acts of Terrorism" was added to your policy and is shown on your Declarations. This endorsement provides that, with respect to "certified acts of terrorism", ERIE will not pay any amounts for which we are not responsible under the terms of the Act.

If you have any questions regarding this notice or Terrorism Insurance Coverage under your policy, please contact your Agent.

1



ERIE INSURANCE GROUP

ULTRAFLEX PACKAGE
UL-NH (Ed. 1/05) UF-8989

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# MECHANICAL AND ELECTRICAL BREAKDOWN COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** The following is added to **Section II - Perils Insured Against - Building(s) - Coverage 1; Business Personal Property and Personal Property of Others - Coverage 2, and Additional Income Protection - Coverage 3:**

We will cover direct damage to "covered objects" for "loss" caused by "mechanical, electrical or pressure systems breakdown" on the premises described in the "Declarations".

**B.** The following Paragraphs **B.1.k., B.1.l., B.8., B.9.,** and **B.10.** in **Section III - Exclusions** are deleted.

**C.** Paragraph **A.11.** in **Section III - Exclusions** is replaced by the following:

We do not cover "loss" by the failure of power or other utility service supplied to the insured premises, however caused, if the failure occurs away from the insured premises, except as provided in Extensions of Coverage - A.6. and A.8., unless a covered "loss" ensues, and then only for ensuing "loss". However, we will pay for "loss" resulting from "mechanical, electrical, or pressure systems breakdown" to any transformer, electrical apparatus, or any "covered object" that is:

1. Located on or within 1,500 feet of the insured premises;

2. Owned by the building owner at your premises, or owned by a public utility company; and

3. Used to supply telephone, electricity, air conditioning, heating, gas, water or steam to the insured premises.

**D.** The following is added to Paragraph **B.** in **Section VIII - Extensions of Coverage:**

**Ammonia Contamination**

We will cover buildings, and business personal property and personal property of others for ammonia contamination resulting from "mechanical, electrical or pressure systems breakdown" to a "covered object".

We will pay up to $25,000 including salvage expense for any one "loss" caused by ammonia contamination.

**E.** The following is added to **Section X - Commercial Property Conditions:**

**SUSPENSION**

Whenever a mechanical, electrical or pressure object is found to be in or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against "loss" from an accident to that object. This can be done by delivering or mailing a written notice of suspension to:

1. Your last known address;

2. The address where the object is located.

If we suspend your insurance, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

**F.** The following are added to **Section XI - Definitions:**

"Covered objects" mean any mechanical, electrical or pressure systems as respects "mechanical, electrical or pressure systems breakdown" except the following types of property:

1. Insulating or refractory material;

2. Buried vessel or piping;

3. Sewer piping, piping forming a part of a fire protection system or water piping other than:

    a. Feed water piping between any boiler and its feed pump or injector;

    b. Boiler condensate return piping;

    c. Water piping forming a part of refrigerating and air conditioning systems; or

    d. Vessels and piping used for cooling, humidifying or space heating purposes.

4. Structure, foundation, cabinet or compartment containing the object;

5. Power shovel, dragline, excavator, vehicle, aircraft, floating vessel or structure, penstock, draft tube or well-casing;

6. Conveyor, crane elevator, escalator or hoist, but not excluding any electrical machine or electrical

apparatus mounted on or used with this equipment;

7. Felt, wire, screen, die, extrusion plate, swing hammer, grinding disc, cutting blade, cable, chain, belt, rope, clutch plate, brake pad, non-metallic part or any part or tool subject to frequent, periodic replacement.

"Mechanical, electrical or pressure systems breakdown" means direct damage to "covered objects" as follows:

1. Mechanical breakdown, including rupture or bursting caused by centrifugal force;

2. Artificially generated electrical current, including electrical arcing, that disturbs electrical devices, appliance or wires;

3. Explosion of steam boiler, steam piping, steam engines or steam turbines owned or leased by you or operated under your control;

4. "Loss" or damage to steam boiler, steam pipes, steam engines or steam turbines; or

5. "Loss" or damage to hot water boilers or other water heating equipment.

If covered electrical equipment requires drying out as a result of flood, we will pay for the direct expenses of such drying out.



**ERIE INSURANCE GROUP**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
# PRODUCTION OR PROCESS MACHINERY - DEDUCTIBLE

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A. The following is added to Section V - Deductibles:**

We will pay the amount of "loss" to "production or process machinery" caused by "mechanical, electrical, or pressure systems breakdown" in any one occurrence which is in excess of either $1,000 or the deductible amount applying to Building(s) (Coverage 1) and Business Personal Property and Personal Property of Others (Coverage 2) shown in the "Declarations", whichever is the greater amount.

For Income Protection Coverage, if the loss to "production or process machinery" is caused by "mechanical, electrical, or pressure systems breakdown", we will pay the amount of "income" loss which is in excess of one day multiplied by the "average daily value".

Should the policy deductible apply to the same "loss", only the deductibles for "production or process machinery" plus income protection or the policy deductible, whichever is the greater amount, shall be used.

**B. The following definitions are added to Section XI - Definitions:**

"Average daily value" means the loss of "income" for that location that you would have earned had no "mechanical, electrical or pressure systems breakdown" occurred during the "interruption of business" divided by the number of days in that period.

We will make no reduction for loss of "income" not being earned, or the number of working days, because the "mechanical, electrical, or pressure systems breakdown" occurred, or any other scheduled or unscheduled shutdowns during the "interruption of business". If the Business Income and Extra Expense dollar deductible is expressed as a number times the "average daily value", that amount will be calculated as follows:

The "average daily value" will be the "income" for the entire location that would have been earned had no "mechanical, electrical, or pressure system breakdown" occurred during the period of "interruption of business" divided by the number of working days in that period. No reduction shall be made for the "income" not being earned or in the number of working days, because of the "mechanical, electrical, or pressure systems breakdown" or any other scheduled or unscheduled shutdowns during the period of interruption. The "average daily value" applies to all locations included in the valuation of the loss.

The number indicated in the Declarations will be multiplied by the "average daily value" as determined above. The result will be used for the Business Income and Extra Expense dollar deductible.

The "average daily value" applies to all locations included in the valuation of the loss.

**Example**

Business is interrupted partially or completely for 10 days. If there had been no "mechanical, electrical, or pressure systems breakdown", the total location income for those 10 days would have been $5,000. The Income Protection Deductible is 3 times the "average daily value".

$5,000 divided by 10 = $500 Average Daily Value.

3 times $500 = $1,500 Loss of Income Protection Deductible.

"Production or process machinery" means any machine or apparatus that processes or produces a product intended for eventual sale. This includes all component parts of such machine or apparatus and any other equipment used exclusively with such machine or apparatus.

1



ERIE INSURANCE GROUP

ULTRAFLEX PACKAGE
UL-LI. (Ed. 1/05) UF-8620

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AUTO REPAIR SHOPS ERIEPLACEABLE ENHANCEMENTS ENDORSEMENT

This endorsement modifies insurance provided under the following:

ULTRAFLEX COMMERCIAL PROPERTY COVERAGE PART

**A.** The following is added to Paragraph A. Covered Property of Section I - Coverage 2 - Business Personal Property and Personal Property of Others:

Business Personal Property and Personal Property of Others — Coverage B covers:

Your and your employees' tools while in or on the described buildings, or in the open, or in a vehicle, on the premises described in the "Declarations" or within 1,500 feet thereof. For tools and equipment off premises, coverage is provided under Paragraph F. 1. Coverage - Mechanic" Tools.

**B.** The amount of insurance under Paragraph B.1. Accounts Receivable of Section VIII - Extensions of Coverage is increased from $25,000 to $30,000 for any one "loss".

**C.** The amount of insurance under Paragraph B.21. Money and Securities of Section VIII - Extensions of Coverage is increased from $1,000 to $5,000 for any one "loss".

**D.** The amount of insurance under Paragraph B.25. Pollutants Clean Up and Removal of Section VIII - Extensions of Coverage is increased from $10,000 to $20,000.

**E.** The amount of insurance under Paragraph B.30. Valuable Papers and Records of Section VIII - Extensions of Coverage is increased from $25,000 to $30,000 for any one "loss".

**F.** The following is added to Section I - Coverages:

**1. COVERAGE - MECHANICS' TOOLS**

    **a. Insuring Agreement**

        We will pay up to $10,000 for direct physical "loss" of or damage to covered property caused by any of the covered causes of "loss" listed under Section II - Perils Insured Against:

    **b. Covered Property**

        We will cover:

        1) Your portable powered and non-powered hand tools;

        2) Your employee's portable powered and non-powered hand tools;

        3) Portable powered and non-powered hand tools in your care, custody or control.

        4) Your "mechanics' non-mobile equipment;

        5) Your employee's "mechanics' non-mobile equipment; and

        6) "Mechanics non-mobile equipment" in your care, custody or control.

        We will also cover all portable powered, non-powered hand tools and non-mobile equipment that you lease, rent or borrow from anyone else up to $2,500 for any one "loss".

    **c. Property Not Covered**

        We do not cover:

        1) Aircraft or watercraft;

        2) "Automobiles", trucks, tractors, trailers, and similar conveyances designed for highway use or used for over the road transportation of people or cargo;

        3) Contraband or property in the course of illegal transportation or trade;

        4) Property while airborne;

        5) Property that is waterborne, except by fire;

        6) Property that you loan, lease, or rent to others;

1

7) Property while it is stored or operated underground in connection with any mining operations;

8) "Mobile equipment"; or

9) Plans, blueprints, designs or specifications.

by the following:

**d. Covered Cause of Loss**

This coverage insures against risk of "loss" or damage to the covered property, unless the "loss" is excluded in Section III - Exclusions of this coverage.

**e. Section III - Exclusions: is replaced by the following:**

**A.** We will not pay for "loss" or damage to covered property caused directly or indirectly by any of the following. Such "loss" or damage is excluded regardless of any cause or event that contributes concurrently or in any sequence to the "loss".

1) **Civil Authority**

Seizure or destruction of covered property by order of governmental authority.

However, we will cover "loss" caused by acts of destruction ordered by governmental authority to prevent the spread of a fire.

2) **Intentional Acts**

Intentional loss, meaning any "loss" arising from an act committed by, or at the direction of the insured with the intent to cause a "loss".

3) **Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of "loss".

4) **Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination unless fire ensues, and then only for ensuing "loss".

5) **War**

War, whether declared or undeclared, discharge of a nuclear weapon (even if accidental), hostile or warlike action in time of peace or war, insurrection, rebellion, revolution, civil war, usurped power, including action taken by governmental authority in defending against such an occurrence.

6) **Weather Conditions**

Weather conditions, but only if weather conditions contribute in any way with a peril excluded in this section to produce the "loss".

7) **Seepage or Leakage**

Continuous or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**B.** We do not cover "loss" or damage resulting from:

1) **Criminal, Fraudulent or Dishonest Acts**

Dishonest or criminal acts committed by you or any of your members of a limited liability company, or any of your employees, directors, officers, trustees or authorized representatives:

a) Acting alone or in collusion with other persons; or

b) While performing services for you or otherwise.

We will cover acts of destruction by your employees but only for ensuing "loss"; but theft by your employees (including leased employees) is not covered.

2) **Deterioration or Contamination**

a) Deterioration or contamination;

b) Wear and tear, rust or corrosion, or rotting;

c) Change in color, texture, or finish;

d) Inherent vice;

e) Any quality, fault, or weakness in the covered property that causes it to damage or destroy itself;

f) Marring or scratching;

g) Settling, cracking, shrinking, bulging or expansion of pavements, foundations, walls, sidewalks, driveways, patios, floors, roofs, or ceilings;

h) Termites, vermin, insects, rodents, birds, skunks, raccoons, spiders, or reptiles.

3) **Electricity**

Electricity other than lightning unless fire or explosion ensues, and then only for ensuing "loss".

4) **Humidity/Temperature**

Humidity, freezing or overheating, dampness, dryness, or changes in or extremes of temperature.

5) **Loss of Use**

Loss of use, business interruption, delay or loss of market.

6) **Mechanical Breakdown**

We do not pay for "loss" caused by mechanical breakdown including centrifugal force.

However, this exclusion does not apply to "loss" resulting from testing.

7) **Missing Property**

Missing property where the only proof of "loss" is unexplained or mysterious disappearance of covered property, or shortage of property discovered on taking inventory, or any other instance where there is no physical evidence to show what happened to the covered property. This exclusion does apply

to covered property in the custody of a carrier for hire.

8) **Pollutants**

Discharge, dispersal, seepage, migration, release, or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril insured against. But if "loss" or damage by a peril insured against results from the discharge, dispersal, seepage, migration, release, or escape of "pollutants", we will pay for the resulting damage caused by the peril insured against.

f. **Section V - Deductibles** is replaced by the following:

We will pay the amount of "loss" to covered property in any one occurrence which is in excess of $500 if the "loss" is only covered by this endorsement.

When the occurrence involves "loss" to covered property under the Mechanics' Tools of the Ultraflex Auto Repair Shops Erieplaceable Enhancements Endorsement and under another Tool Coverage Part, the highest deductible will be applied to the "loss".

g. The following is added to Paragraph B. **Where in Section IX - When and Where This Policy Applies:**

Coverage applies only while the covered property is in the United States, its territories or possessions, Puerto Rico or Canada. This includes property that is in transit within the continental United States.

h. The following is added to **Section X - Commercial Property Conditions:**

**Valuation**

The value of covered property will be based on the actual cash value at the time of "loss" (with a deduction for depreciation).

i. The following is added to **XI - Definitions**

"Mechanics' non-mobile equipment" means machinery and equipment of a portable nature

that you use in your repairing and servicing operations. "Mechanics' non-mobile equipment" also means powered and non-powered equipment such as portable welders, portable heaters, ladders, scaffolding, mortar mixers, pumps, table/radial saws and generators.

"Mechanics' non-mobile equipment" does not include powered and non-powered hand tools.

## 2. COVERAGE - EXTRA EXPENSE

**Extra Expense Coverage**

The following is added to **Extra Expenses** of **Income Protection** of **Section VIII - Extensions of Coverage:**

The $25,000 amount of insurance for which we will pay under **Extensions of Coverage - Income Protection** is increased by $10,000 for Extra Expenses only.

The maximum amount of insurance we will pay for any one "loss" for "extra expenses" is $35,000.

## 3. COVERAGE - CONTRACT PENALTY

We will pay up to $5,000 for contractual penalties that you are required to pay your customers. These contractual penalties must be a result of any clause in your contracts for failure to timely deliver your products according to the contract terms. These contractual penalties must result from "loss" or damage to your covered property by an insured peril.

## 4. COVERAGE - PEAK SEASON INCREASE - BUSINESS PERSONAL PROPERTY AND PERSONAL PROPERTY OF OTHERS

The amount of insurance for Business Personal Property and Personal Property of Others (Coverage 2) is increased by 25% of the limit for Business Personal Property and Personal Property of Others (Coverage 2) to cover "loss" to business personal property and personal property of others during a peak season.

3

**STATE OF NEW YORK**
**INSURANCE DEPARTMENT**
One Commerce Plaza
Albany, NY 12257

C 10930113259

LAW DIVISION     ESYS
FAKOI
MAY 14 2008

2008-04354

STATE OF NEW YORK
Supreme Court, County of Orange

Sarinsky's Garage Inc.
                            against                 Plaintiff(s)
Erie Insurance Company of New York
                                                   Defendant(s)

RE : Erie Insurance Company of New York

Attorney for Plaintiff(s) and Defendant  please take notice as follows:

Sirs :
Attorney for Plaintiff(s) is hereby advised of acknowledgement of service upon me of
Summons and Verified Complaint in the above entitled action on May 8, 2008 at Albany,
New York. The $40 fee is also acknowledged.

Original to Attorney for Plaintiff(s) :

    Bloom & Bloom, P.C.
    Attorneys at Law
    530 Blooming Grove Turnpike
    P.O. Box 4323
    New Windsor, New York 12553
Pursuant to the requirement of section 1212 of the Insurance Law, Defendant is hereby
notified of service as effected above. A copy of the paper is enclosed.
Duplicate to Defendant :

    Jan R. Van Gorder, Esquire
    Erie Insurance Company of New York
    100 Erie Insurance Place
    Erie, Pennsylvania 16530

                        Clark J. Williams

                        by Clark J. Williams
                        Special Deputy Superintendent

HOME OFFICE
MAY 14 2008

Dated Albany, New York, May 09, 2008
431809     C.A.#91255